ELLEN F. ROSENBLUM
Attorney General
MARC ABRAMS #890149
Assistant Attorney-in-Charge
CHRISTINA L. BEATTY-WALTERS #981634
Assistant Attorney General
JESSICA SPOONER  #105919
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Tel: (503) 947-4700
Tel: (971) 673-1880
Fax: (971) 673-5000
Email:   marc.abrams@doj.state.or.us
             Tina.BeattyWalters@doj.state.or.us
             jessica.spooner@doj.state.or.us
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STEVEN ARTHUR LATULIPPE, M.D., <br><br> Plaintiff, <br><br> v. <br><br> KATHLEEN HARDER, in her official capacity as Chair of the Oregon Medical Board; SAURABH GUPTA, in her official capacity as Vice Chair of the Oregon Medical Board; ERIN CRAMER, in her official capacity as Secretary/Physician Assistant Member of the Oregon Medical Board; ROBERT M. CAHN, in his official capacity as a member of the Oregon Medical Board; JAMES K. LACE, in his official capacity as a member of the Oregon Medical Board; CHARLOTTE LIN, in her official capacity as a member of the Oregon Medical Board; PATTI LOUIE, in her official capacity as a member of the Oregon Medical Board; JENNIFER L. LYONS, in her official capacity as a member of the Oregon Medical Board; | Case No.   3:21-cv-00090-HZ <br><br> **DECLARATON OF MARC ABRAMS IN SUPPORT OF PARTIAL MOTION TO DISMISS** |

ALI MAGEEHON, in her official capacity as
a member of the Oregon Medical Board;
CHERE PEREIRA, in her official capacity as
a member of the Oregon Medical Board;
CHRISTOFFER POULSEN, in his official
capacity as a member of the Oregon Medical
Board; ANDREW SCHINK, in his official
capacity as a member of the Oregon Medical
Board; JILL SHAW, in her official capacity as
a member of the Oregon Medical Board,

        Defendants.

1.      I am Assistant Attorney-in-Charge of the Civil Litigation Section of the Oregon Department of Justice ("DOJ"), and I am one of the attorneys representing Kathleen Harder, Saurabh Gupta, Erin Cramer, Robert M. Cahn, James K. Lace, Charlotte Lin, Patti Louie, Jennifer L. Lyons, Ali Mageehon, Chere Pereira, Chrisoffer Poulsen, Andrew Schink and Jill Shaw in this action.

2.      Attached to this declaration as Exhibit A is the transcript of the oral argument on plaintiff's motion for a temporary restraining order dated February 4, 2021.

**I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

DATED March __18__, 2021.

                                      *s/Marc Abrams*
                                      MARC ABRAMS
                                      Assistant Attorney-in-Charge

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF OREGON

3               PORTLAND DIVISION

4

5    STEVEN ARTHUR LATULIPPE,          )
                                       )
6                    Plaintiff,        )   No. 3:21-cv-00090-HZ
                                       )
7          vs.                         )   February 4, 2021
                                       )
8    KATHLEEN HARDER, et al,           )   Portland, Oregon
                                       )
9    _____Defendants._____)

10

11

12

13              TRANSCRIPT OF PROCEEDINGS

14                 (Oral Argument)

15

16      BEFORE THE HONORABLE MARCO A. HERNANDEZ

17      UNITED STATES DISTRICT COURT CHIEF JUDGE

18

19

20

21

22

23   Court Reporter:          Ryan White, RMR, CRR, CSR/CCR
                              United States District Courthouse
24                            1000 SW 3rd Avenue, Room 301
                              Portland, Oregon 97204
25                            (503) 326-8184

```
 1                         APPEARANCES

 2


 3   For the Plaintiff:        TYLER & BURSCH, LLP
                               By:  MARIAH GONDEIRO
 4                             mgondeiro@tylerbursch.com
                               25026 Las Brisas Road
 5                             Murrieta, California 92562
                               (406) 781-1485
 6

 7   For the Defendants:       Oregon Department of Justice
                               By:  CHRISTINA L. BEATTY-WALTERS
 8                             tina.beattywalters@doj.state.or.us
                               By:  MARC ABRAMS
 9                             marc.abrams@doj.state.or.us
                               100 SW Market Street
10                             Portland, Oregon 97201
                               (971) 673-1880
11
                               DEPARTMENT OF JUSTICE
12                             By:  JESSICA B. SPOONER
                               jessica.spooner@doj.state.or.us
13                             1162 Court Street NE
                               Salem, Oregon 97301
14                             (503) 947-4700

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (February 4, 2021; 1:41 p.m.)

 2

 3                      P R O C E E D I N G S

 4

 5            THE COURT:  Good afternoon.

 6            MR. ABRAMS:  Good afternoon, Your Honor.

 7            THE COURT:  We are here in the matter of LaTulippe

 8   versus Harder.  It is case number 21-cv-00090-HZ.  This matter

 9   comes to the court by way of a hearing on a motion for a

10   temporary restraining order.

11            Before we begin, I want to take roll and find out who

12   is on the call this afternoon.  So let me first begin by asking

13   whether I have a court reporter that can hear me.

14            Ryan, are you on?

15            THE COURT REPROTER:  (Indicating.)

16            THE COURT:  Okay.  Good.

17            And then secondly, who's here for the plaintiff?

18            MS. GONDEIRO:  Mariah Gondiero, Your Honor.

19            THE COURT:  Thank you.

20            And for the defense?

21            MR. ABRAMS:  Mark Abrams, Oregon Department of

22   Justice, Your Honor.  On the phone, Christina Beatty-Walters and

23   Jessica Spooner.

24            THE COURT:  And who is going to be arguing for the

25   state?
```

1          MR. ABRAMS:  I will, Your Honor.

2          THE COURT:  All right.  So let's begin our

3  conversation starting with the plaintiff.  The plaintiff has the

4  burden of proof and has to do the convincing this afternoon, so

5  we'll start -- we'll start there.

6          What does the plaintiff want to tell me?

7          And I guess I should say that I've read everything

8  that you've submitted.  Just be aware of that.

9          MS. GONDEIRO:  Thank you, Your Honor.

10          THE COURT:  And let's start with the plaintiff.

11          What do you want to tell me?

12          MS. GONDEIRO:  Thank you, Your Honor.

13          This Court should immediately reinstate

14  Dr. LaTulippe's license because the defendants violated his

15  procedural due process rights and he is suffering irreparable

16  harm that is concrete and increasing daily.

17          In regards to the merits, Dr. LaTulippe has alleged a

18  due process violation.  The Court looks at three issues:  The

19  liberty of property interest protected by the constitution, a

20  deprivation of the interest by the government, and a lack of due

21  process.

22          The two issues really aren't in dispute right now:

23  The plaintiff self-evidently has an interest in his medical

24  license and it is a constitutionally-protected interest that the

25  Supreme Court has acknowledged.  And it's also not disputed that

1    the defendants have deprived Dr. LaTulippe of his property

2    interest by taking away his license.

3              The main issue that is before this Court is whether

4    Dr. LaTulippe has alleged a lack of due process.

5              The Supreme Court in *Cleveland Board of Education* has

6    described the root requirement of due process as requiring that

7    an individual be given an opportunity for a hearing before he is

8    deprived of any significant property.  Indeed, Oregon law

9    requires the board provide a contested hearing before revoking

10   or suspending a license.

11             THE COURT REPORTER:  I'm sorry.  Ms. --

12             MS. GONDEIRO:  -- in the case of an emergency --

13             THE COURT REPORTER:  Sorry.

14             Yes, Ms. Gondeiro.  It sounds like you might be

15   reading.  But if you could please slow down, especially with our

16   audio.  You need to slow down, please.

17             MS. GONDEIRO:  Yes.

18             It is only in a case of an emergency where a doctor

19   poses an imminent danger to the public that the board may

20   suspend a license without first providing a hearing.  The

21   defendants have woefully failed to demonstrate that

22   Dr. LaTulippe poses an imminent danger to the public.

23             This is not a case where the board has specific

24   evidence that Dr. LaTulippe has harmed a patient such as by

25   performing an illegal abortion.  Here, the board's basis is

1   based upon vague allegations of anonymous accusers and

2   speculative hypotheticals that have no real basis in fact.

3          THE COURT:  Let me interrupt you about that point for

4   just a minute.

5          Is there a disagreement that the plaintiff,

6   Dr. LaTulippe, in this case, is not abiding by the health

7   authority's mandate and the governor's mandate that he wear a

8   mask while he's treating his patients and the people in this

9   clinic wear a mask while he's treating his patients?  Is that in

10  dispute?

11         MS. GONDEIRO:  Well, Your Honor, they really haven't

12  met their burden of showing that he is -- that the people in his

13  clinic are not wearing a mask or have reasons why they're not

14  wearing a mask.  Many of them, as you will see in the

15  declaration, have claimed that they do not wear a mask because

16  it causes them discomfort.

17         THE COURT:  I'm not talking about that.  I'm talking

18  about the providers, him and his -- and the people that work for

19  him.  Is that in dispute?

20         MS. GONDEIRO:  That he follows the Oregon

21  health -- public health order?

22         THE COURT:  No.  I said does he wear a mask?

23         MS. GONDEIRO:  He does not wear a mask at all times.

24         THE COURT:  All right.  And then in addition to him,

25  the other people that work with him also do not wear a mask; is

1  that correct?

2         MS. GONDEIRO:  Yes, Your Honor.  But as they say in

3  the -- their declarations, many of them have reasons why they do

4  not wear a mask.

5         THE COURT:  The people that work there?

6         MS. GONDEIRO:  They do work there, Your Honor.  There

7  are two people:  There is the receptionist and then

8  Dr. LaTulippe's wife.

9         THE COURT:  And none of those people are wearing

10  masks; is that correct?

11         MS. GONDEIRO:  No, Your Honor.  Or, yes, Your Honor.

12         THE COURT:  All right.  And in -- and the reason

13  Dr. LaTulippe and perhaps the people that work with him are not

14  wearing a mask is that he disagrees with the -- with I'm going

15  to say -- use the word "science," but he disagrees with the

16  science right now that says that it is better, safer, and

17  mandated by law that individuals that are providing healthcare

18  wear masks.  He disagrees with that perspective; is that

19  correct?

20         MS. GONDEIRO:  Your Honor, I think that he, and as

21  well as reputable studies and reputable experts, would disagree

22  with many of the scientific opinions of the board.

23         But I do not think that is the reason and it's not

24  alleged in the complaint that the two employees that work there

25  do not wear masks.  As they claim in their declaration, they

1   have anxiety and asthma.  If they wear a mask, they have, you

2   know, terrible side effects.

3          But I think what's important to note is that the board

4   hasn't even alleged an actual threat or real evidence of harm.

5   And as we allege in the complaint, they make sure that all

6   COVID-19 patients are not around other people.  There have been

7   no COVID-19 transmissions traced to the office.

8          And also, Your Honor, as I get back to, you know,

9   their justification, which is based on the emergency exception,

10  not only are the allegations not true, Your Honor, as we contest

11  in the complaint, he has never told anyone that they should not

12  wear a mask in the office.  Many of the allegations are simply

13  not true and, most importantly, they have yet to prove any real

14  evidence.

15         The need for a predetermination hearing is required

16  when a defendant cannot satisfy the three-prong test laid out in

17  *Mathews v. Eldridge*.  This test includes the private interest

18  affected, the risk of an erroneous deprivation through the

19  procedures used, and the value of other safeguards and the

20  government's interests.

21         An individual's private interest in his business, in

22  his livelihood, is significant.  The Supreme Court has

23  consistently recognized the severity of depriving someone of

24  their means of livelihood, and that is exactly what the board

25  has done.  They have deprived him of his livelihood and his

1   ability to make a living.

2            Regarding the second prong, which I think is the most

3   important issue that we're discussing, the risk of an erroneous

4   deprivation must be considered under the procedures used by

5   defendants along with the probable value, if any, of additional

6   or substitute procedural safeguards.

7            Here, a pre-deprivation hearing would have eliminated

8   the risk of erroneous deprivation.  As the Supreme Court has

9   recognized in *Cleveland Board of Education*, dismissals, or in

10  this case a suspension, will often involve factual disputes.

11  That is definitely the case here.

12           Many of the board's allegations are factually

13  erroneous.  Dr. LaTulippe has never told a patient he could not

14  treat them if they wore a mask.  Indeed, if the board would have

15  actually conducted an early hearing and done their due

16  diligence, they would have learned that their concerns were

17  completely unfounded.  Dr. LaTulippe has not contributed to any

18  known COVID-19 case.  His COVID-19 protocol is highly

19  successful.

20           Further, the order of suspension is defective and

21  failed to provide Dr. LaTulippe proper notice.  For one, the

22  board doesn't articulate in the appropriate place which laws

23  Dr. LaTulippe has actually violated.  The conclusions of law

24  section does not, in fact, refer to any law that has been

25  violated.  The only reference to a violation of law is found in

1   the findings of fact.

2           And more importantly, Your Honor, the board does not

3   specify a single act or omission that constitutes a serious

4   danger to the public's health or safety.  Notice, to comply with

5   due process requirements, must set forth the alleged misconduct

6   with particularity.

7           If you look over the findings of fact, none of the

8   allegations are specific.  The board relies on an anonymous

9   accuser, but they do not even describe the context of the

10  accuser in Dr. LaTulippe's conversation.

11          The board also references a YouTube video that

12  provides false information about masks.  The board didn't even

13  provide a link to this supposed YouTube video.  My client could

14  have posted multiple YouTube videos.  How is he supposed to know

15  what YouTube video they're talking about or what to challenge?

16          And notably, Your Honor, on page 5 of the order, they

17  state that Dr. LaTulippe's conduct might constitute a danger to

18  the health or safety of the public.

19          Summarized, their justification rests entirely on the

20  prospective notion that Dr. LaTulippe might contribute to the

21  spread of COVID-19.  These conclusory findings do not satisfy

22  the specific and particular requirements the Supreme Court

23  requires.

24          Regarding the final prong, Your Honor, the government

25  interest in immediate termination does not outweigh the first

1   two prongs.  Affording Dr. LaTulippe an early hearing would not

2   have imposed significant administrative burdens or intolerable

3   delays.  A prompt hearing would have actually minimized

4   financial and administrative burdens because the board would

5   have quickly learned their allegations were meritless.

6           Finally, Your Honor, the balance of equities tips

7   sharply in favor of Dr. LaTulippe and an injunction serves the

8   public interest.  The harm to the government and public interest

9   merge when the government is the opposing party.

10          With respect to a balancing of equities, the

11   speculative harm of the possibility of COVID-19 transmission

12   does not outweigh the instant and definite harm of denying

13   Dr. LaTulippe his constitutionally-protected right to due

14   process, nor his right to make a living in his chosen profession

15   and his patients' need for competent and accessible medical

16   care.

17          The board has failed to identify a single

18   COVID-19-positive case that can be verifiably traced back to the

19   plaintiff's practice.  Speculative injury does not constitute

20   irreparable injury.

21          Moreover, the board supposedly received an anonymous

22   tip back in the summer.  They waited five months to issue an

23   emergency suspension which belies their claim that emergency

24   exists.

25          On the other hand, Dr. LaTulippe and his clients are

1    suffering real, concrete injuries that are increasing every day.

2    Dr. LaTulippe has lost everything he has worked towards.  He has

3    lost his ability to make a living and provide for his family in

4    the middle of a pandemic where people are suffering.

5            Further, Your Honor, his clients desperately need his

6    help.  He gets calls every single day from his patients who are

7    scared because they don't have another pain specialist to go to

8    in Dallas, Oregon.  This isn't a huge city where there's a lot

9    of pain and addiction specialists.  He has helped people who

10   were on the brink of suicide because they were in so much pain

11   and they call him crying because they need his help.

12           And also, Your Honor, many of his clients are

13   relapsing and just struggling.  Thus, it is not Dr. LaTulippe

14   that is posing an immediate threat, Your Honor; it is the

15   board's decision to suspend his license.

16           Thank you.

17           THE COURT:  Thank you.

18           I'll hear from the state.

19           MR. ABRAMS:  Thank you, Your Honor.

20           To start with, a couple of facts, not necessarily

21   responding to Counsel's oral argument, but to some of the

22   response -- reply memo.

23           They have contended that there is only one anonymous

24   complaint against Dr. LaTulippe.  In fact, there are seven, and

25   the citation to that is paragraph 3 of the Carruth declaration.

1      There is no challenge, as you noted, that

2 Dr. LaTulippe and his staff are not wearing masks.  There is no

3 challenge that most of his patients, anyone who is asymptomatic,

4 have not been made to wear masks.  There is no challenge to the

5 idea that he refused to change that practice, and he said so in

6 an August 31, 2020, letter.  That is Carruth Declaration

7 Exhibit 2.

8      Now, as has been made clear, the Oregon OSHA, the

9 Oregon Health Authority, and the Oregon Medical Board have all

10 instituted regulations, and the governor has instituted

11 emergency orders that require masks not merely in the

12 professional setting, such as Dr. LaTulippe's office, but

13 whenever any of us go out in public or are in places where

14 people congregate, as, indeed, Your Honor is currently wearing a

15 mask himself.

16      But the issue here is much simpler than that.  The

17 issue is, is Dr. LaTulippe allowed, entitled to pre-deprivation

18 due process.

19      It is not contested that there's a hearing set, as we

20 mentioned in the status conference a few days back, for

21 February 16th.  Indeed, Dr. LaTulippe knew this process was

22 underway in August.  He was suspended in early December.  He did

23 not reach out to the OMB for a month.  If this is irreparable

24 harm, it is curious that he waited a full month before having a

25 discussion with the OMB.  And the citation to that is

1   paragraph 2 of the Foote declaration.

2          He was offered a hearing that would have started

3   three days ago, Your Honor.  He was offered a hearing that would

4   have started February 1st.  He turned it down.  So again, more

5   delay, not the OMB's doing, but Dr. LaTulippe's.  The citation

6   for that:  Foote declaration, paragraph 3.

7          Now, plaintiff wants to argue the science, and she

8   said -- Counsel has said multiple times, four or five times, in

9   her presentation that OMB has not met its burden.  We have no

10  burden.  This is their TRO.  The burden is -- all aspects is on

11  them.

12          Nonetheless, we would stand by the science.  We have

13  submitted to you the Farris declaration, the Sidelinger

14  declaration.  They talk about the help that wearing masks does

15  in combating this disease.  They talk about how they do prevent

16  many of the droplets and reduce the risk of threat.  That's good

17  enough science to make this the law of the state of Oregon and,

18  in fact, it is the law of the state of Oregon.

19          Now, plaintiff seems to think that he's immune from

20  that, that he cannot obey if he thinks he knows the science

21  better, and I would suggest to you that if I think the bar

22  rulings on not allowing me to talk to a represented party are

23  foolish, I do not get to talk to an unrepresented party and get

24  away with it.  If I'm a physicist who thinks that a yellow light

25  needs to be six seconds long in order to be safe to allow me to

1    slow down my car, I do not get to run a four-second red light

2    and take that extra two seconds because I believe the science

3    for setting that red light is wrong.

4          Plaintiff has suggested not only that the masks don't

5    protect from COVID, but do trap carbon dioxide to a person's

6    detriment.  This is bad science.  COVID is 120 -- the virus

7    itself is 125 nanometers in size, an eighth of a micron, as the

8    doctor said.  $CO_2$, a carbon dioxide molecule, is 33 nanometers,

9    only one quarter the size.  So if there's anybody with suspect

10    science, the doctor's science makes no sense.

11          And while he has said he studied microbiology, the

12    virus is not transmitted free floating, but it's with much

13    larger respiratory droplets, and you can see that in paragraph 6

14    of the Farris declaration, paragraph 4 of the Sidelinger

15    declaration, and Exhibit 1 of the Brown declaration at

16    paragraph 3.2.

17          So moving on to the question of due process, we agree

18    on the three-part test; what is the private interest, what is

19    the erroneous deprivation through the procedures used, what is

20    the government's interest.

21          The government's interest, I think, is clear.  It's

22    keeping the citizens of Oregon safe.  The private

23    interest -- and if plaintiff has -- and if somebody is on the

24    phone, they -- it would be nice if they could mute it.  I'm

25    hearing background voices.

1        The private interest has been variously presented as

2   either the plaintiff's patients or the plaintiff's income.

3   Well, under *Winter* and under the other cases we've cited in our

4   brief, you do not get to assert another person's harm in support

5   of a temporary restraining order and in support of your

6   pre-deprivation process, and his financial interest is not

7   related to irreparable injury except in certain circumstances.

8        But the cases cited by plaintiff himself, *Laudermill*

9   and *Tanasse v. City of St. George*, and also the case we cited,

10  *Gilbert v. Homar*, all make clear that pre-deprivation hearings

11  are very rare, and, for example, even if not allowed -- if

12  you're on subsistence, if you're on welfare -- the individual in

13  *Laudermill*, cited frequently by plaintiffs, was a person

14  receiving welfare benefits.  They were deprived in a way that is

15  probably far more serious than a doctor like Dr. LaTulippe who

16  presumably is financially much more comfortably off.  They were

17  not entitled to a pre-deprivation hearing.

18       The idea that there would be a less erroneous

19  deprivation through the procedures used, the procedures used

20  prehearing, pre-deprivation, and post-deprivation are the same.

21  They come out of chapter 183 of the Oregon Administrative

22  Procedures Act.  There would not be anything different.

23       What plaintiff is assuming, what plaintiff is

24  presuming is that if we had heard him, we would have been

25  convinced.

1          Now, I do not want to speak for my client and what

2     they will do.  I am not on the Oregon Medical Board and the

3     hearing has not taken place yet.  But I warrant that when they

4     suspended Dr. LaTulippe because he said "I am not going to put

5     on a mask, I am not going to make my staff put on a mask," and

6     we can conclude based on today's representations that he would

7     still say that, that I warrant there would not be much

8     difference in pre- and post-hearing risk of erroneous

9     deprivation.

10          Now, that brings us to the elements of the temporary

11     restraining order.  The likelihood of success element -- and we

12     are in agreement it's the four elements from *Winter*.  Burden of

13     success at all times rests with the plaintiff under *Clinton v.*

14     *Jones*, 530 US 681 at 708.

15          The plaintiff has presumed there is no evidence of

16     actual harm.  That is not the standard for suspension.

17          The standard -- and it's in the document, the

18     suspension document -- is imminent threat of danger.  That

19     standard does not require the OMB to conclude or prove the harm

20     has already occurred.

21          So it's not our duty to show that masks are harmful.

22     Indeed, at most, all we have to do is show what is uncontested;

23     that there was a regulation, that it was applied broadly to

24     everyone, and that Dr. LaTulippe refused to comply.  None of

25     those are disputed.

1        So under *Gilbert*, under *Tanasse*, the law is fairly

2   clear that there is no right to a pre-deprivation hearing.  A

3   post-deprivation hearing has already been set and is on the

4   books.

5        As to irreparable harm, I touched on it a little

6   earlier.  Financial harm is not relevant in -- except in very

7   unusual circumstances.  That's both *Winter* and *MR v. Dreyfus*,

8   697 F.3d 706 at 725.

9        There is almost never a situation in which loss of

10  money constitutes an irreparable injury, and so we just don't

11  think that that is -- that is going to be the standard for

12  irreparable harm.  And, indeed, had Dr. LaTulippe called the OMB

13  worried about the suspension, had he accepted an earlier

14  hearing, it all would have been done probably in early December.

15  It seems strange to claim that his license (audio broke)

16  resurrected now because of delays entirely of his own doing.

17        Now, as to the balance of equities, clearly the

18  parties disagree.  And while plaintiff will not agree to the

19  steps to protect public health and safety, you have the Farris

20  and particularly the Sidelinger declaration.

21        Now, Dr. Sidelinger is the state's epidemiologist.

22  He's been in charge for last year of keeping Oregonians safe and

23  he's telling you what the good science is and why we have asked

24  every doctor, every person, everyone going to a grocery store to

25  obey these rules, this wearing of a mask.  This has been part of

1  a multifaceted approach that has kept the death rate in Oregon

2  at a fraction of that of other states.  We have the fifth lowest

3  death rate in the country, and all four other states -- Maine,

4  Vermont, North Dakota, and I believe it's -- the fourth is

5  either Montana or Hawaii -- are way less than half our size.  We

6  are the largest state with the smallest death rate.  We're doing

7  something right.

8          Now, plaintiff claims we can't prove that there have

9  been more cases of COVID-19 as a result of his practice.  That

10  assertion is not backed up by any evidence he has put into the

11  record here.  And I think plaintiffs have persistently in this

12  hearing and in their paperwork confused making an allegation

13  with establishing a fact.  This is not a motion to dismiss

14  hearing, of course; it is a TRO hearing.

15          And he has not claimed -- he has not put anything in

16  the record in front of you that there's been any contact tracing

17  related to his practice.  So whether or not there's been a case,

18  he cannot know.

19          We know that COVID-19 can be asymptomatic for two

20  weeks.  How would we know if he's had a case come out of his

21  situation, his practice?  We can't afford to take that risk, and

22  that is why we apply this equally to everyone in Oregon and why

23  that is part of the balance of equities and tips in favor of the

24  state.

25          Now, to just address briefly the issue that

1    it's -- his patients need him.  I believe there's a document in

2    the record that shows most of them have been covered by other

3    physicians at this time, but they have persistently and quite

4    simply falsely claimed there's nothing else that can fit their

5    practice convenient for their patients.

6              Now, as we said in our documents, Salem has

7    four -- not one, not two, but four pain specialty clinics only

8    15 miles away and the plaintiff does not explain why 15 miles is

9    too inconvenient for someone needing medical help.

10             Just to give you a comparison, Your Honor, about daily

11   life in Dallas, Oregon, their school, their high school is in

12   the division 5A, section 3 conference.  It plays against teams

13   in Corvallis, Lebanon, South Albany.  Corvallis is 29 miles

14   away, South Albany is 31 miles away, Lebanon is 47 miles away.

15   Mere entertainment takes the citizens of Dallas quite a bit

16   farther afield.  So I would suggest that 15 miles is not too far

17   to go.  Dallas is functionally an excerpt of Salem anyway.

18             So finally, the question of public interest.

19             The status quo matters here, Your Honor.  COVID-19

20   spreads widely through persons who presume themselves to be

21   healthy.  The Harley rally in Sturgis, South Dakota, this last

22   summer created a vector that spiked much in the state of

23   Minnesota.  Large mask-less gatherings, whether educational,

24   religious, or otherwise, have caused major outbreaks.

25             Plaintiff would have the Court toss aside the judgment

1    of the CDC and medical professionals not only around the nation

2    but, for the most part, around the world and say that he knows

3    better than the groups that regulate and he knows better than

4    the overwhelming consensus of medical opinion.  The Court should

5    decline that offer.

6              Thank you.

7              THE COURT:  Thank you.

8              And then a reply on the part of the plaintiff?

9    Rebuttal?

10             MS. GONDEIRO:  Yes, Your Honor.  There are several

11   things I want to clarify.

12             First, the defendants claim that there are seven

13   anonymous accusers, but none of those accusers are actually

14   mentioned in the notice, which, again, just goes to show that

15   they -- or they are not mentioned in the order which again goes

16   to show why they did not provide sufficient notice.  They don't

17   even -- they don't even put out all the evidence they're relying

18   on, which is a violation of due process.

19             The defendants also note that they provided notice to

20   Dr. LaTulippe in August.  That is completely false.  They never

21   notified him that they were going to suspend his license.  They

22   let him know that an investigation was open.  And it seems very

23   odd to me that they would wait five months to file an emergency

24   suspension if they had this information back in August.

25             And I also want to talk about the delay, Your Honor.

 1          It's actually the defendant's requirement under state

 2   law that they provide a hearing simultaneously when they -- when

 3   they suspend someone's license.  This was actually not

 4   Dr. LaTulippe's burden.  But it is very important to know that

 5   they abruptly suspended his license without no -- no notice.

 6          So it's not surprising he would -- he would need a

 7   month to figure out his insurance so he could afford an

 8   attorney, and then, you know, find someone who could help him.

 9   A month is not a significantly long time considering the board

10   didn't do their duties in providing a hearing right away and

11   also suspended his license abruptly.

12          I also want to go to the government interest,

13   Your Honor.

14          The government interest is, you know, whether they

15   couldn't provide a pre-deprivation hearing prior to suspending

16   his license.  They seemed to skirt around the issue of whether

17   it would have cost them, you know, administrative or financial

18   burdens, and I think that's very notable because it wouldn't

19   have cost them anything.  They would have conducted this hearing

20   regardless, so they could have provided him a hearing before

21   suspending his license.

22          I also want to talk about the irreparable injury.

23          Your Honor, it's irreparable harm when you violate

24   someone's constitutional rights.  That constitutes irreparable

25   harm.

1       And he's not just suffering harm, Your Honor.  They

2   have tarnished his reputation.  It is now well-known,

3   Your Honor, in the media what has happened.  This is going to

4   hurt his earning capacity for years on end and his reputation as

5   a credible doctor.

6       And Your Honor, I think it's also important to note

7   that they suspended his license over the phone.  They couldn't

8   even give him -- they couldn't even serve him a suspension

9   order.  He had to learn about it in the media.

10      And regarding the cases, Your Honor, regarding their

11  burden of showing an emergency, they seem to want to flip the

12  burden.  It's their burden to show that he constitutes an

13  emergency and why they should be able to circumvent the normal

14  due process required under Oregon law which is providing a

15  predetermination hearing.

16      They claim that he hasn't proven that no COVID-19 case

17  has been traced to his office.  He actually has alleged that in

18  the complaint.  And it's their burden to show that he

19  constitutes an imminent threat and they have, again, failed to

20  do that.

21      You know, we can argue the science, Your Honor.  There

22  are lots of studies.  There are a lot of reputable doctors that

23  would disagree with the science they're providing.  And I'm not

24  sure why they think that their science is better than our -- the

25  other science that is out there that shows that masks do not

1   have a material effect in curtailing the spread of COVID-19.

2   There are studies that we cite to in our declaration.

3          And I also -- finally, Your Honor, I want to talk

4   about the patients.

5          The board seems to know what is best for the patients,

6   but they don't know what is best for the patients.  They rely on

7   Dr. LaTulippe because they trust Dr. LaTulippe.  He provides a

8   unique pain treatment that other doctors do not provide.  In

9   fact, that is why they go to Dr. LaTulippe, because many of them

10  were just addicted to painkillers and, quite frankly, just

11  didn't have a good quality of life.  So that is -- that is why

12  they -- they rely on Dr. LaTulippe.

13         So in sum, Your Honor, I do not believe that the board

14  has any justification in not providing my client a

15  predetermination hearing, and I think it's very clear that my

16  client is suffering irreparable harm, not only financial harm,

17  but reputational harm, and the harm to his constitutional

18  rights.

19         Thank you.

20         THE COURT:  Thank you.

21         It is the Court's observation that when you boil it

22  down there really is not a great deal of dispute regarding the

23  facts in this case.

24         The State of Oregon, through the medical board,

25  learned that the plaintiff was not following the required COVID

1  protocols in his medical practice.  The state notified the

2  plaintiff regarding this issue and received correspondence back

3  from the plaintiff regarding his perspective on the COVID

4  protocols.

5          Two letters were sent to the plaintiff; one in August,

6  and one in November of 2020.  Each letter warned the plaintiff

7  of the possible sanctions for failing to comply with the

8  protocols.  The first letter notified the plaintiff that he was

9  under investigation and asked him to respond to the allegations

10  regarding the failure to follow certain COVID protocols.

11          In addition, there was allegations that along with him

12  not following protocols or failing to follow proper protocols,

13  he was advising others, including his own patients, that masks

14  should not be worn and that -- and he was accused of making

15  posts on social media discouraging people from following

16  distancing guidelines related to COVID.

17          In the first letter, the plaintiff was told that the

18  investigation was made pursuant to ORS 677.320 and he was

19  expected to respond by September the 3rd.  That was the August

20  letter.

21          In his response, the plaintiff disputed the social

22  distancing allegations and that he had done anything on social

23  media.  As regards the masks, he explained that the mask

24  requirements were based on bogus science and explained that he

25  was taking the position he was regarding masks for science

1    reasons.

2         While the first letter described possible outcomes of

3    the investigation and included suspension as a possibility, the

4    second letter merely said that his care of patients was not

5    consistent with the standards, might be unprofessional and

6    dishonorable and dangerous to the health or safety and subject

7    to administrative sanctions.  He was told he needed to comply

8    with the law regarding PPE and with the standards of medical

9    care expected by medical professionals.

10        To that second letter, the plaintiff responded by

11   saying he was doing a good job, there were no infections at his

12   clinic, but did not say that he would comply with the PPE

13   requirements.

14        Then, in December, the OMB investigator went to the

15   clinic, and based on the investigation, the OMB found that masks

16   were only required at the clinic if someone had COVID or other

17   symptoms but that patients and providers were not wearing masks.

18        After learning that and gathering the information that

19   it had, the OMB issued an emergency suspension order based both

20   on ORS 677.25 -- 205(3) and 183.430(2).  They did that because

21   they felt that plaintiff's practice was an immediate danger to

22   the public and presented a serious danger to the public's health

23   or safety.

24        The notice that was given to the plaintiff in that

25   suspension order said that he had a right to a hearing as soon

1   as practicable, and after a month, the plaintiff asked for a

2   hearing which is now scheduled for February the 16th.  It's also

3   true that there was an earlier hearing date available, but the

4   plaintiff needed a little bit more time.

5          Thereafter, the plaintiff sued in this court alleging

6   violation of the First and Fourteenth Amendment and seeking a

7   temporary restraining order based on procedural due process.

8          Regarding a restraining order, the Court is to

9   evaluate the four *Winter* factors:  First, the likelihood of

10  success on the merits; second, the issue of irreparable harm;

11  third, the Court is to consider the equities as between the

12  parties; and, finally, the Court is to consider the interests of

13  the public.

14         As regards the likelihood of success on the merits, I

15  consider the issue under *Gilbert*, and there's the three factors

16  that the parties have asked me to take a look at:  The private

17  interest and how that will be affected; secondly, the risk of an

18  erroneous deprivation of such an interest through the procedures

19  used, and the probable value, if any, for additional substantive

20  procedural safeguards; and, third, the government's interests

21  including the function involved in the fiscal and administrative

22  burdens additional or substitute procedural requirements would

23  entail.

24         In looking at the private interests, it is the

25  defendant's ability to earn a living which has been temporarily

1   suspended and will ultimately be decided at a hearing which is

2   scheduled in a couple of weeks.

3          The other factor, the risk of erroneous deprivation, I

4   think the Court needs to take a look at what would have been

5   different had the matter immediately proceeded to some type of

6   hearing and whether there was a risk of an erroneous deprivation

7   of such interests.  The Court finds there is not.

8          In this case, once again, there are little or few

9   disputes about the facts.  It is clear that the doctor, for his

10  own reasons, reasons that he believes are scientifically based,

11  is not complying with PPE protocols.  That was true before

12  his -- when he first learned that he was under investigation and

13  continued to be true up through the time that he was suspended.

14  Having had a hearing earlier on would not have changed that

15  reality.

16         And it is not this Court's job to judge the science.

17  This is a summary proceeding.  I'm not judging who's right or

18  who's wrong about the science.  It is clear that the state has

19  promulgated rules which physicians and everybody else is

20  expected to comply with.

21         So that factor, the risk of erroneous deprivation, I

22  find tips in the favor of the state.

23         And then finally, the government's interest.

24         The government has a very large interest in making

25  sure people are safe.  These existing protocols support that

1    view.

2          Under ORS 677.205(3), it states that, "If the board

3    finds that evidence in its possession indicates that a

4    continuation in the practice of a license constitutes an

5    immediate danger to the public..."  It does not say that the

6    state must show that someone has in fact been harmed.  It simply

7    states that the board finds that the evidence in its possession

8    indicates the continuation and practice of a license constitutes

9    immediate danger.  The board in this case made that finding.

10          In addition, part of the Court's consideration is the

11    time between the deprivation, that is when the license was

12    suspended, until a hearing, and in this case the Court finds

13    that that period of time is not unreasonable.  The plaintiff is

14    entitled to a post-deprivation hearing and has one scheduled in

15    the next couple of weeks.

16          Other factors that are important to the Court to

17    consider are the risk of not acting.  There is some risk that

18    the state might be incorrect about all of this.  But again,

19    there is a hearing scheduled which will address that issue.  On

20    the other hand, if the state is correct, then lives may well be

21    saved by the steps that the state has taken.

22          In turning to the *Winter* factors, is there a

23    likelihood of success on the merits on the part of plaintiff?  I

24    find there is not a likelihood of success on the merits for the

25    reasons that I have described.  The state followed the ORSs

1    under 677.205, found that there was an emergency, and has

2    provided for a hearing within a short period of time; therefore,

3    I do not find that on the Fourteenth Amendment claim the

4    plaintiff is likely to succeed on the merits.

5           As regards irreparable harm, the irreparable harm

6    prong only goes to the irreparability of harm as regards the

7    plaintiff.  And in this case, his ability to earn a living is

8    temporarily suspended under the statute until a hearing can take

9    place and a decision on the merits can be made.  I do not find

10   that that harm is irreparable, particularly in light of the fact

11   that he gets a lot of process and hearing which will occur

12   within the next couple of weeks.

13          As regards the balance of equities, the plaintiff's

14   need for a license in order to make a living as against the risk

15   of harm that can occur as a result of a pandemic and the spread

16   of a deadly disease, I find that the balance of equities tips in

17   favor of the state.

18          And as regards the public interest, in this case, I do

19   give some consideration to the patients of Dr. LaTulippe because

20   they are, in fact, members of the public.  But as regards the

21   interests of that population and the general public and the risk

22   of a pandemic spreading through the general public as a result

23   of Dr. LaTulippe's decisionmaking process, I find, again, that

24   factor tips in favor of the state.

25          For those reasons, the motion for a temporary

1   restraining order is denied.  This case will now proceed to the

2   next phase which will be a hearing on a preliminary injunction.

3            I believe I have told you that I have an interest in

4   making this decision today because I was aware that a hearing

5   was coming up quickly.

6            At this juncture, I want the parties to confer about

7   proposed dates for the next phase.  That will allow for

8   discovery to take place between now and the next date for a

9   preliminary injunction.  And after the parties have conferred,

10  please contact the court.  We'll set a scheduling conference and

11  we will move on from there.

12           Is there anything else from the plaintiff's

13  perspective at this juncture?

14           MS. GONDEIRO:  Your Honor, there is two important

15  things.

16           One is, regarding the hearing, even though it's on the

17  16th, it doesn't end until the 21st, and then the earliest time

18  that they can actually issue a decision is April 1st because the

19  administrative law judge has to confer with the board.  So even

20  though the hearing is coming up, he won't get a decision for a

21  few more months.

22           And as I -- I guess I just -- there are two main

23  things I disagree with.  There are many disputed facts.  The

24  order, the client does actually dispute the allegations and the

25  findings of fact.  Those are not actually undisputed.  He --

1          THE COURT:  That's not really what my question was

2    focused on.  My question was:  Is there anything else that you

3    need me to address at this moment?

4          MS. GONDEIRO:  No, just the hearing, letting you know

5    that hearing timeline.

6          THE COURT:  All right.  Thank you.

7          Is there anything else from the defense that you need

8    me to address at this juncture?

9          MR. ABRAMS:  Your Honor, we are going to have a

10   conference call with plaintiff's counsel shortly after this

11   hearing ends to deal with the scheduling, just to let you know

12   that.

13         Our only question is, is there anything that is of

14   particular interest to you that you would like us to focus on in

15   preparing for the preliminary injunction to assist the Court in

16   its function?

17         THE COURT:  There's nothing that I can think of at

18   this particular juncture.  Everything that occurred during the

19   preparation for the temporary restraining order, from my

20   perspective, was comprehensive.  It may be that in discovery the

21   parties will learn other things that may be relevant to the

22   Court's decision at a preliminary injunction hearing.  That I

23   cannot predict.

24         MR. ABRAMS:  Thank you, Your Honor.

25         Nothing further from us.

1          THE COURT:  Thank you.  That's all for today.

2          Thank you.

3

4          (The proceedings concluded at 2:33 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3          I certify, by signing below, that the foregoing is a

 4   true and correct transcript, to the best of my ability, of the

 5   videoconference/telephonic hearing taken by stenographic means.

 6   Due to the videoconference/telephonic connection, parties

 7   appearing via videoconference, speakerphone or cell phone,

 8   speakers overlapping when speaking, speakers not identifying

 9   themselves before they speak, fast speakers, the speaker's

10   failure to enunciate, and/or other technical difficulties that

11   occur during videoconference/telephonic proceedings, this

12   certification is limited by the above-mentioned reasons and any

13   technological difficulties of such proceedings occurring over

14   the videoconference/speakerphone at the United States District

15   Court of Oregon in the above-entitled cause.  A transcript

16   without an original signature, conformed signature, or digitally

17   signed signature is not certified.

18

19          DATED this 21st day of February, 2021.

20

21                              // Ryan White
                                _____
22                              RYAN WHITE
                                Registered Merit Reporter
                                Certified Realtime Reporter
23                              Expires 9/30/2022
                                Washington CCR No. 3220
24                              Expires 10/25/2021
                                Oregon CSR No. 10-0419
25                              Expires 12/31/2023
```

**1**

**1** [1] - 15:15
**10-0419** [1] - 34:24
**10/25/2021** [1] - 34:24
**100** [1] - 2:9
**1000** [1] - 1:24
**1162** [1] - 2:13
**12/31/2023** [1] - 34:25
**120** [1] - 15:6
**125** [1] - 15:7
**15** [3] - 20:8, 20:16
**16th** [1] - 13:21, 27:2, 31:17
**183** [1] - 16:21
**183,430(2)** [1] - 26:20
**1:41** [1] - 3:1
**1st** [2] - 14:4, 31:18

**2**

**2** [2] - 13:7, 14:1
**2020** [2] - 13:6, 25:6
**2021** [3] - 1:7, 3:1, 34:19
**205(3** [1] - 26:20
**21-cv-00090-HZ** [1] - 3:8
**21st** [2] - 31:17, 34:19
**25026** [1] - 2:4
**29** [1] - 20:13
**2:33** [1] - 33:4

**3**

**3** [3] - 12:25, 14:6, 20:12
**3.2** [1] - 15:16
**301** [1] - 1:24
**31** [2] - 13:6, 20:14
**3220** [1] - 34:23
**326-8184** [1] - 1:25
**33** [1] - 15:8
**3:21-cv-00090-HZ** [1] - 1:6
**3rd** [1] - 1:24, 25:19

**4**

**4** [3] - 1:7, 3:1, 15:14
**406** [1] - 2:5
**47** [1] - 20:14

**5**

**5** [1] - 10:16
**503** [2] - 1:25, 2:14
**530** [1] - 17:14
**5A** [1] - 20:12

**6**

**6** [1] - 15:13
**673-1880** [1] - 2:10
**677.205** [1] - 30:1
**677.205(3** [1] - 29:2
**677.25** [1] - 26:20
**677,320** [1] - 25:18
**681** [1] - 17:14
**697** [1] - 18:8

**7**

**706** [1] - 18:8
**708** [1] - 17:14
**725** [1] - 18:8
**781-1485** [1] - 2:5

**9**

**9/30/2022** [1] - 34:23
**92562** [1] - 2:5
**947-4700** [1] - 2:14
**971** [1] - 2:10
**97201** [1] - 2:10
**97204** [1] - 1:24
**97301** [1] - 2:13

**A**

**abiding** [1] - 6:6
**ability** [5] - 9:1, 12:3, 27:25, 30:7, 34:4
**able** [1] - 23:13
**abortion** [1] - 5:25
**above-entitled** [1] - 34:15
**above-mentioned** [1] - 34:12
**ABRAMS** [7] - 2:8, 3:6, 3:21, 4:1, 12:19, 32:9, 32:24
**Abrams** [1] - 3:21
**abruptly** [2] - 22:5, 22:11
**accepted** [1] - 18:13
**accessible** [1] - 11:15
**accused** [1] - 25:14
**accuser** [2] - 10:9, 10:10
**accusers** [3] - 6:1, 21:13
**acknowledged** [1] - 4:25
**Act** [1] - 16:22
**act** [1] - 10:3
**acting** [1] - 29:17
**actual** [2] - 8:4, 17:16
**addicted** [1] - 24:10
**addiction** [1] - 12:9
**addition** [3] - 6:24, 25:11, 29:10
**additional** [3] - 9:5, 27:19, 27:22
**address** [4] - 19:25, 29:19, 32:3, 32:8
**administrative** [6] - 11:2, 11:4, 22:17, 26:7, 27:21, 31:19
**Administrative** [1] - 16:21
**advising** [1] - 25:13
**affected** [2] - 8:18, 27:17
**afford** [2] - 19:21, 22:7
**affording** [1] - 11:1
**afield** [1] - 20:16
**afternoon** [4] - 3:5, 3:6, 3:12, 4:4
**ago** [1] - 14:3
**agree** [2] - 15:17, 18:18
**agreement** [1] - 17:12
**al** [1] - 1:8
**Albany** [2] - 20:13, 20:14
**allegation** [1] - 19:12
**allegations** [10] - 6:1, 8:10, 8:12, 9:12, 10:8, 11:5, 25:9, 25:11, 25:22, 31:24
**allege** [1] - 8:5
**alleged** [6] - 4:17, 5:4, 7:24, 8:4, 10:5, 23:17

**alleging** [1] - 27:5
**allow** [2] - 14:25, 31:7
**allowed** [2] - 13:17, 16:11
**allowing** [1] - 14:22
**almost** [1] - 18:9
**Amendment** [2] - 27:6, 30:3
**anonymous** [5] - 6:1, 10:8, 11:21, 12:23, 21:13
**anxiety** [1] - 8:1
**anyway** [1] - 20:17
**APPEARANCES** [1] - 2:1
**appearing** [1] - 34:7
**applied** [1] - 17:23
**apply** [1] - 19:22
**approach** [1] - 19:1
**appropriate** [1] - 9:22
**April** [1] - 31:18
**argue** [2] - 14:7, 23:21
**arguing** [1] - 3:24
**Argument** [1] - 1:14
**argument** [1] - 12:21
**ARTHUR** [1] - 1:5
**articulate** [1] - 9:22
**aside** [1] - 20:25
**aspects** [1] - 14:10
**assert** [1] - 16:4
**assertion** [1] - 19:10
**assist** [1] - 32:15
**assuming** [1] - 16:23
**asthma** [1] - 8:1
**asymptomatic** [2] - 13:3, 19:19
**attorney** [1] - 22:8
**audio** [2] - 5:16, 18:15
**August** [6] - 13:6, 13:22, 21:20, 21:24, 25:5, 25:19
**Authority** [1] - 13:9
**authority's** [1] - 6:7
**available** [1] - 27:3
**Avenue** [1] - 1:24
**aware** [2] - 4:8, 31:4

**B**

**backed** [1] - 19:10
**background** [1] - 15:25
**bad** [1] - 15:6
**balance** [5] - 11:6, 18:17, 19:23, 30:13, 30:16
**balancing** [1] - 11:10
**bar** [1] - 14:21
**based** [8] - 6:1, 8:9, 17:6, 25:24, 26:15, 26:19, 27:7, 28:10
**basis** [2] - 5:25, 6:2
**Beatty** [1] - 3:22
**BEATTY** [1] - 2:7
**Beatty-Walters** [1] - 3:22
**BEATTY-WALTERS** [1] - 2:7
**BEFORE** [1] - 1:16
**begin** [3] - 3:11, 3:12, 4:2
**belies** [1] - 11:23
**believes** [1] - 28:10
**below** [1] - 34:3
**benefits** [1] - 16:14

**best** [3] - 24:5, 24:6, 34:4
**better** [5] - 7:16, 14:21, 21:3, 23:24
**between** [3] - 27:11, 29:11, 31:8
**bit** [2] - 20:15, 27:4
**Board** [4] - 5:5, 9:9, 13:9, 17:2
**board** [23] - 5:9, 5:19, 5:23, 7:22, 8:3, 8:24, 9:14, 9:22, 10:2, 10:8, 10:11, 10:12, 11:4, 11:17, 11:21, 22:9, 24:5, 24:13, 24:24, 29:2, 29:7, 29:9, 31:19
**board's** [3] - 5:25, 9:12, 12:15
**bogus** [1] - 25:24
**boil** [1] - 24:21
**books** [1] - 18:4
**brief** [1] - 16:4
**briefly** [1] - 19:25
**brings** [1] - 17:10
**brink** [1] - 12:10
**Brisas** [1] - 2:4
**broadly** [1] - 17:23
**broke** [1] - 18:15
**Brown** [1] - 14:15
**burden** [11] - 4:4, 6:12, 14:9, 14:10, 17:12, 22:4, 23:11, 23:12, 23:18
**burdens** [4] - 11:2, 11:4, 22:18, 27:22
**BURSCH** [1] - 2:3
**business** [1] - 8:21

## C

**California** [1] - 2:5
**cannot** [4] - 8:16, 14:20, 19:18, 32:23
**capacity** [1] - 23:4
**car** [1] - 15:1
**carbon** [2] - 15:5, 15:8
**care** [3] - 11:16, 26:4, 26:9
**Carruth** [2] - 12:25, 13:6
**case** [20] - 3:8, 5:12, 5:18, 5:23, 6:6, 9:10, 9:11, 9:18, 11:18, 16:9, 19:17, 19:20, 23:16, 24:23, 28:8, 29:9, 29:12, 30:7, 30:18, 31:1
**cases** [4] - 16:3, 16:8, 19:9, 23:10
**caused** [1] - 20:24
**causes** [1] - 6:16
**CCR** [1] - 21:1
**CDC** [1] - 21:1
**cell** [1] - 34:7
**certain** [2] - 16:7, 25:10
**certification** [1] - 34:12
**certified** [1] - 34:17
**Certified** [1] - 34:22
**certify** [1] - 34:3
**challenge** [4] - 10:15, 13:1, 13:3, 13:4
**change** [1] - 13:5
**changed** [1] - 28:14
**chapter** [1] - 16:21
**charge** [1] - 18:22
**CHIEF** [1] - 1:17
**chosen** [1] - 11:14
**Christina** [1] - 3:22
**CHRISTINA** [1] - 2:7
**circumstances** [2] - 16:7, 18:7
**circumvent** [1] - 23:13
**citation** [3] - 12:25, 13:25, 14:5

**cite** [1] - 24:2
**cited** [4] - 16:3, 16:8, 16:9, 16:13
**citizens** [2] - 15:22, 20:15
**city** [2] - 12:8, 16:9
**claim** [6] - 7:25, 11:23, 18:15, 21:12, 23:16, 30:3
**claimed** [3] - 6:15, 19:15, 20:4
**claims** [1] - 19:8
**clarify** [1] - 21:11
**clear** [7] - 13:8, 15:21, 16:10, 18:2, 24:15, 28:9, 28:18
**clearly** [1] - 18:17
**Cleveland** [2] - 5:5, 9:9
**client** [5] - 10:13, 17:1, 24:14, 24:16, 31:24
**clients** [3] - 11:25, 12:5, 12:12
**clinic** [6] - 6:9, 6:13, 26:12, 26:15, 26:16
**clinics** [1] - 20:7
**Clinton** [1] - 17:13
**CO2** [1] - 15:8
**combating** [1] - 14:15
**comfortably** [1] - 16:16
**coming** [2] - 31:5, 31:20
**comparison** [1] - 20:10
**competent** [1] - 11:15
**complaint** [5] - 7:24, 8:5, 8:11, 12:24, 23:18
**completely** [2] - 9:17, 21:20
**comply** [6] - 10:4, 17:24, 25:7, 26:7, 26:12, 28:20
**complying** [1] - 28:11
**comprehensive** [1] - 32:20
**concerns** [1] - 9:16
**conclude** [2] - 17:6, 17:19
**concluded** [1] - 33:4
**conclusions** [1] - 9:23
**conclusory** [1] - 10:21
**concrete** [2] - 4:16, 12:1
**conduct** [1] - 10:17
**conducted** [2] - 9:15, 22:19
**confer** [2] - 31:6, 31:19
**conference** [4] - 13:20, 20:12, 31:10, 32:10
**conferred** [1] - 31:9
**conformed** [1] - 34:16
**confused** [1] - 19:12
**congregate** [1] - 13:14
**connection** [1] - 34:6
**consensus** [1] - 21:4
**consider** [4] - 27:11, 27:12, 27:15, 29:17
**consideration** [2] - 29:10, 30:19
**considered** [1] - 9:4
**considering** [1] - 22:9
**consistent** [1] - 26:5
**consistently** [1] - 8:23
**constitute** [2] - 10:17, 11:19
**constitutes** [7] - 10:3, 18:10, 22:24, 23:12, 23:19, 29:4, 29:8
**constitution** [1] - 4:19
**constitutional** [2] - 22:24, 24:17
**constitutionally** [2] - 4:24, 11:13
**constitutionally-protected** [2] - 4:24,

11:13
**contact** [2] - 19:16, 31:10
**contended** [1] - 12:23
**contest** [1] - 8:10
**contested** [2] - 5:9, 13:19
**context** [1] - 10:9
**continuation** [2] - 29:4, 29:8
**continued** [1] - 28:13
**contribute** [1] - 10:20
**contributed** [1] - 9:17
**convenient** [1] - 20:5
**conversation** [2] - 4:3, 10:10
**convinced** [1] - 16:25
**convincing** [1] - 4:4
**correct** [5] - 7:1, 7:10, 7:19, 29:20, 34:4
**correspondence** [1] - 25:2
**Corvallis** [2] - 20:13
**cost** [2] - 22:17, 22:19
**counsel** [1] - 32:10
**Counsel** [1] - 14:8
**Counsel's** [1] - 12:21
**country** [1] - 19:3
**couple** [4] - 12:20, 28:2, 29:15, 30:12
**course** [1] - 19:14
**court** [4] - 3:9, 3:13, 27:5, 31:10
**COURT** [26] - 1:1, 1:17, 3:5, 3:7, 3:15, 3:16, 3:19, 3:24, 4:2, 4:10, 5:11, 5:13, 6:3, 6:17, 6:22, 6:24, 7:5, 7:9, 7:12, 12:17, 21:7, 24:20, 32:1, 32:6, 32:17, 33:1
**Court** [21] - 1:23, 2:13, 4:13, 4:18, 4:25, 5:3, 5:5, 8:22, 9:8, 10:22, 20:25, 21:4, 27:8, 27:11, 27:12, 28:4, 28:7, 29:12, 29:16, 32:15, 34:15
**Court's** [4] - 24:21, 28:16, 29:10, 32:22
**Courthouse** [1] - 1:23
**covered** [1] - 20:2
**COVID** [7] - 15:5, 15:6, 24:25, 25:3, 25:10, 25:16, 26:16
**COVID-19** [11] - 8:6, 8:7, 9:18, 10:21, 11:11, 19:9, 19:19, 20:19, 23:16, 24:1
**COVID-19-positive** [1] - 11:18
**created** [1] - 20:22
**credible** [1] - 23:5
**CRR** [1] - 1:23
**crying** [1] - 12:11
**CSR** [1] - 34:24
**CSR/CCR** [1] - 1:23
**curious** [1] - 13:24
**curtailing** [1] - 24:1

## D

**daily** [2] - 4:16, 20:10
**Dakota** [2] - 19:4, 20:21
**Dallas** [4] - 12:8, 20:11, 20:15, 20:17
**danger** [9] - 5:19, 5:22, 10:4, 10:17, 17:18, 26:21, 26:22, 29:5, 29:9
**dangerous** [1] - 26:6
**date** [2] - 27:3, 31:8
**DATED** [1] - 34:19
**dates** [1] - 31:7
**days** [2] - 13:20, 14:3

**deadly** [1] - 30:16
**deal** [2] - 24:22, 32:11
**death** [3] - 19:1, 19:3, 19:6
**December** [3] - 13:22, 18:14, 26:14
**decided** [1] - 28:1
**decision** [6] - 12:15, 30:9, 31:4, 31:18, 31:20, 32:22
**decisionmaking** [1] - 30:23
**declaration** [2] - 6:15, 7:25, 12:25, 14:1, 14:6, 14:13, 14:14, 15:14, 15:15, 18:20, 24:2
**Declaration** [1] - 13:6
**declarations** [1] - 7:3
**decline** [1] - 21:5
**defective** [1] - 9:20
**defendant** [1] - 8:16
**defendant's** [2] - 22:1, 27:25
**Defendants** [2] - 1:9, 2:7
**defendants** [6] - 4:14, 5:1, 5:21, 9:5, 21:12, 21:19
**defense** [2] - 3:20, 32:7
**definite** [1] - 11:12
**definitely** [1] - 9:11
**delay** [1] - 14:5, 21:25
**delays** [2] - 11:3, 18:16
**demonstrate** [1] - 5:21
**denied** [1] - 31:1
**denying** [1] - 11:12
**Department** [2] - 2:7, 3:21
**DEPARTMENT** [1] - 2:11
**deprivation** [23] - 4:20, 8:18, 9:4, 9:7, 9:8, 13:17, 15:19, 16:6, 16:10, 16:17, 16:19, 16:20, 17:9, 18:2, 18:3, 22:15, 27:18, 28:3, 28:6, 28:21, 29:11, 29:14
**deprived** [4] - 5:1, 5:8, 8:25, 16:14
**depriving** [1] - 8:23
**describe** [1] - 10:9
**described** [3] - 5:6, 26:2, 29:25
**desperately** [1] - 12:5
**detriment** [1] - 15:6
**difference** [1] - 17:8
**different** [2] - 16:22, 28:5
**difficulties** [2] - 34:10, 34:13
**digitally** [1] - 34:16
**diligence** [1] - 9:16
**dioxide** [2] - 15:5, 15:8
**disagree** [4] - 7:21, 18:18, 23:23, 31:23
**disagreement** [1] - 6:5
**disagrees** [3] - 7:14, 7:15, 7:18
**discomfort** [1] - 6:16
**discouraging** [1] - 25:15
**discovery** [2] - 31:8, 32:20
**discussing** [1] - 9:3
**discussion** [1] - 13:25
**disease** [2] - 14:15, 30:16
**dishonorable** [1] - 26:6
**dismiss** [1] - 19:13
**dismissals** [1] - 9:9
**dispute** [5] - 4:22, 6:10, 6:19, 24:22, 31:24
**disputed** [4] - 4:25, 17:25, 25:21, 31:23
**disputes** [2] - 9:10, 28:9

**distancing** [2] - 25:16, 25:22
**DISTRICT** [3] - 1:1, 1:2, 1:17
**District** [2] - 1:23, 34:14
**division** [1] - 20:12
**DIVISION** [1] - 1:3
**doctor** [6] - 5:18, 15:8, 16:15, 18:24, 23:5, 28:9
**doctor's** [1] - 15:10
**doctors** [2] - 23:22, 24:8
**document** [3] - 17:17, 17:18, 20:1
**documents** [1] - 20:6
**done** [4] - 8:25, 9:15, 18:14, 25:22
**down** [5] - 5:15, 5:16, 14:4, 15:1, 24:22
**Dr** [41] - 4:14, 4:17, 5:1, 5:4, 5:22, 5:24, 6:6, 7:8, 7:13, 9:13, 9:17, 9:21, 9:23, 10:10, 10:17, 10:20, 11:1, 11:7, 11:13, 11:25, 12:2, 12:13, 12:24, 13:2, 13:12, 13:17, 13:21, 14:5, 16:15, 17:4, 17:24, 18:12, 18:21, 21:20, 22:4, 24:7, 24:9, 24:12, 30:19, 30:23
**Dreyfus** [1] - 18:7
**droplets** [2] - 14:16, 15:13
**Due** [1] - 34:6
**due** [13] - 4:15, 4:18, 4:20, 5:4, 5:6, 9:15, 10:5, 11:13, 13:18, 15:17, 21:18, 23:14, 27:7
**during** [2] - 32:18, 34:11
**duties** [1] - 22:10
**duty** [1] - 17:21

### E

**earliest** [1] - 31:17
**early** [4] - 9:15, 11:1, 13:22, 18:14
**earn** [2] - 27:25, 30:7
**earning** [1] - 23:4
**Education** [2] - 5:5, 9:9
**educational** [1] - 20:23
**effect** [1] - 24:1
**effects** [1] - 8:2
**eighth** [1] - 15:7
**either** [2] - 16:2, 19:5
**Eldridge** [1] - 8:17
**element** [1] - 17:11
**elements** [2] - 17:10, 17:12
**eliminated** [1] - 9:7
**emergency** [11] - 5:12, 5:18, 8:9, 11:23, 13:11, 21:23, 23:11, 23:13, 26:19, 30:1
**employees** [1] - 7:24
**end** [2] - 23:4, 31:17
**ends** [1] - 32:11
**entail** [1] - 27:23
**entertainment** [1] - 20:15
**entirely** [2] - 10:19, 18:16
**entitled** [4] - 13:17, 16:17, 29:14, 34:15
**enunciate** [1] - 34:10
**epidemiologist** [1] - 18:21
**equally** [1] - 19:22
**equities** [7] - 11:6, 11:10, 18:17, 19:23, 27:11, 30:13, 30:16
**erroneous** [11] - 8:18, 9:3, 9:8, 9:13, 15:19, 16:18, 17:8, 27:18, 28:3, 28:6,

28:21
**especially** [1] - 5:15
**establishing** [1] - 19:13
**et** [1] - 1:8
**evaluate** [1] - 27:9
**evidence** [6] - 5:24, 8:4, 8:14, 17:15, 19:10, 21:17, 29:3, 29:7
**evidently** [1] - 4:23
**exactly** [1] - 8:24
**example** [1] - 16:11
**except** [2] - 16:7, 18:6
**exception** [1] - 8:9
**excerpt** [1] - 20:17
**Exhibit** [2] - 13:7, 15:15
**existing** [1] - 28:25
**exists** [1] - 11:24
**expected** [3] - 25:19, 26:9, 28:20
**experts** [1] - 7:21
**Expires** [3] - 34:23, 34:24, 34:25
**explain** [1] - 20:8
**explained** [2] - 25:23, 25:24
**extra** [1] - 15:2

### F

**F.3d** [1] - 18:8
**fact** [12] - 6:2, 9:24, 10:1, 10:7, 12:24, 14:18, 19:13, 24:9, 29:6, 30:10, 30:20, 31:25
**factor** [3] - 28:3, 28:21, 30:24
**factors** [4] - 27:9, 27:15, 29:16, 29:22
**facts** [4] - 12:20, 24:23, 28:9, 31:23
**factual** [1] - 9:10
**factually** [1] - 9:12
**failed** [4] - 5:21, 9:21, 11:17, 23:19
**failing** [2] - 25:7, 25:12
**failure** [2] - 25:10, 34:10
**fairly** [1] - 18:1
**false** [2] - 10:12, 21:20
**falsely** [1] - 20:4
**family** [1] - 12:3
**far** [2] - 16:15, 20:16
**Farris** [3] - 14:13, 15:14, 18:19
**fast** [1] - 34:9
**favor** [5] - 11:7, 19:23, 28:22, 30:17, 30:24
**February** [6] - 1:7, 3:1, 13:21, 14:4, 27:2, 34:19
**felt** [1] - 26:21
**few** [3] - 13:20, 28:8, 31:21
**fifth** [1] - 19:2
**figure** [1] - 22:7
**file** [1] - 21:23
**final** [1] - 10:24
**finally** [5] - 11:6, 20:18, 24:3, 27:12, 28:23
**financial** [5] - 11:4, 16:6, 18:6, 22:17, 24:16
**financially** [1] - 16:16
**findings** [4] - 10:1, 10:7, 10:21, 31:25
**first** [9] - 3:12, 5:20, 10:25, 21:12, 25:8, 25:17, 26:2, 27:9, 28:12
**First** [1] - 27:6

**fiscal** [1] - 27:21
**fit** [1] - 20:4
**five** [3] - 11:22, 14:8, 21:23
**flip** [1] - 23:11
**floating** [1] - 15:12
**focus** [1] - 32:14
**focused** [1] - 32:2
**follow** [2] - 25:10, 25:12
**followed** [1] - 29:25
**following** [3] - 24:25, 25:12, 25:15
**follows** [1] - 6:20
**foolish** [1] - 14:23
**Foote** [2] - 14:1, 14:6
**FOR** [1] - 1:2
**foregoing** [1] - 34:3
**forth** [1] - 10:5
**four** [7] - 14:8, 15:1, 17:12, 19:3, 20:7, 27:9
**four-second** [1] - 15:1
**Fourteenth** [2] - 27:6, 30:3
**fourth** [1] - 19:4
**fraction** [1] - 19:2
**frankly** [1] - 24:10
**free** [1] - 15:12
**frequently** [1] - 16:13
**front** [1] - 19:16
**full** [1] - 13:24
**function** [2] - 27:21, 32:16
**functionally** [1] - 20:17

## G

**gathering** [1] - 26:18
**gatherings** [1] - 20:23
**general** [2] - 30:21, 30:22
**George** [1] - 16:9
**Gilbert** [3] - 16:10, 18:1, 27:15
**given** [2] - 5:7, 26:24
**GONDEIRO** [16] - 2:3, 3:18, 4:9, 4:12, 5:12, 5:17, 6:11, 6:20, 6:23, 7:2, 7:6, 7:11, 7:20, 21:10, 31:14, 32:4
**Gondeiro** [1] - 5:14
**Gondiero** [1] - 3:18
**government** [7] - 4:20, 10:24, 11:8, 11:9, 22:12, 22:14, 28:24
**government's** [5] - 8:20, 15:20, 15:21, 27:20, 28:23
**governor** [1] - 13:10
**governor's** [1] - 6:7
**great** [1] - 24:22
**grocery** [1] - 18:24
**groups** [1] - 21:3
**guess** [2] - 4:7, 31:22
**guidelines** [1] - 25:16

## H

**half** [1] - 19:5
**hand** [2] - 11:25, 29:20
**HARDER** [1] - 1:8
**Harder** [1] - 3:8
**Harley** [1] - 20:21
**harm** [25] - 4:16, 8:4, 11:8, 11:11, 11:12, 13:24, 16:4, 17:16, 17:19, 18:5, 18:6,

18:12, 22:23, 22:25, 23:1, 24:16, 24:17, 27:10, 30:5, 30:6, 30:10, 30:15
**harmed** [2] - 5:24, 29:6
**harmful** [1] - 17:21
**Hawaii** [1] - 19:5
**Health** [1] - 13:9
**health** [8] - 6:6, 6:21, 10:4, 10:18, 18:19, 26:6, 26:22
**healthcare** [1] - 7:17
**healthy** [1] - 20:21
**hear** [2] - 3:13, 12:18
**heard** [1] - 16:24
**hearing** [50] - 3:9, 5:7, 5:9, 5:20, 8:15, 9:7, 9:15, 11:1, 11:3, 13:19, 14:2, 14:3, 15:25, 16:17, 17:3, 17:8, 18:2, 18:3, 18:14, 19:12, 19:14, 22:2, 22:10, 22:15, 22:19, 22:20, 23:15, 24:15, 26:25, 27:2, 27:3, 28:1, 28:6, 28:14, 29:12, 29:14, 29:19, 30:2, 30:8, 30:11, 31:2, 31:4, 31:16, 31:20, 32:4, 32:5, 32:11, 32:22, 34:5
**hearings** [1] - 16:10
**help** [5] - 12:6, 12:11, 14:14, 20:9, 22:8
**helped** [1] - 12:9
**HERNANDEZ** [1] - 1:16
**high** [1] - 20:11
**highly** [1] - 9:18
**himself** [2] - 13:15, 16:8
**Homar** [1] - 16:10
**Honor** [40] - 3:6, 3:18, 3:22, 4:1, 4:9, 4:12, 6:11, 7:2, 7:6, 7:11, 7:20, 8:8, 8:10, 10:2, 10:16, 10:24, 11:6, 12:5, 12:12, 12:14, 12:19, 13:14, 14:3, 20:10, 20:19, 21:10, 21:25, 22:13, 22:23, 23:1, 23:3, 23:6, 23:10, 23:21, 24:3, 24:13, 31:14, 32:9, 32:24
**HONORABLE** [1] - 1:16
**huge** [1] - 12:8
**hurt** [1] - 23:4
**hypotheticals** [1] - 6:2

## I

**idea** [2] - 13:5, 16:18
**identify** [1] - 11:17
**identifying** [1] - 34:8
**illegal** [1] - 5:25
**immediate** [5] - 10:25, 12:14, 26:21, 29:5, 29:9
**immediately** [2] - 4:13, 28:5
**imminent** [4] - 5:19, 5:22, 17:18, 23:19
**immune** [1] - 14:19
**important** [6] - 8:3, 9:3, 22:4, 23:6, 29:16, 31:14
**importantly** [2] - 8:13, 10:2
**imposed** [1] - 11:2
**IN** [1] - 1:1
**included** [1] - 26:3
**includes** [1] - 8:17
**including** [2] - 25:13, 27:21
**income** [1] - 16:2
**inconvenient** [1] - 20:9
**incorrect** [1] - 29:18

**increasing** [2] - 4:16, 12:1
**Indeed** [1] - 17:22
**indeed** [5] - 5:8, 9:14, 13:14, 13:21, 18:12
**indicates** [2] - 29:3, 29:8
**Indicating** [1] - 3:15
**individual** [2] - 5:7, 16:12
**individual's** [1] - 8:21
**individuals** [1] - 7:17
**infections** [1] - 26:11
**information** [3] - 10:12, 21:24, 26:18
**injunction** [5] - 11:7, 31:2, 31:9, 32:15, 32:22
**injuries** [1] - 12:1
**injury** [5] - 11:19, 11:20, 16:7, 18:10, 22:22
**instant** [1] - 11:12
**instituted** [1] - 13:10
**insurance** [1] - 22:7
**interest** [26] - 4:19, 4:20, 4:23, 4:24, 5:2, 8:17, 8:21, 10:25, 11:8, 15:18, 15:20, 15:21, 15:23, 16:1, 16:6, 20:18, 22:12, 22:14, 27:17, 27:18, 28:23, 28:24, 30:18, 31:3, 32:14
**interests** [6] - 8:20, 27:12, 27:20, 27:24, 28:7, 30:21
**interrupt** [1] - 6:3
**intolerable** [1] - 11:2
**investigation** [6] - 21:22, 25:9, 25:18, 26:3, 26:15, 28:12
**investigator** [1] - 26:14
**involve** [1] - 9:10
**involved** [1] - 27:21
**irreparability** [1] - 30:6
**irreparable** [15] - 4:15, 11:20, 13:23, 16:7, 18:5, 18:10, 18:12, 22:22, 22:23, 22:24, 24:16, 27:10, 30:5, 30:10
**issue** [12] - 5:3, 9:3, 11:22, 13:16, 13:17, 19:25, 22:16, 25:2, 27:10, 27:15, 29:19, 31:18
**issued** [1] - 26:19
**issues** [2] - 4:18, 4:22
**itself** [1] - 15:7

## J

**JESSICA** [1] - 2:12
**Jessica** [1] - 3:23
**jessica.spooner@doj.state.or.us** [1] - 2:12
**job** [2] - 26:11, 28:16
**Jones** [1] - 17:14
**JUDGE** [1] - 1:17
**judge** [2] - 28:16, 31:19
**judging** [1] - 28:17
**judgment** [1] - 20:25
**juncture** [4] - 31:6, 31:13, 32:8, 32:18
**Justice** [2] - 2:7, 3:22
**JUSTICE** [1] - 2:11
**justification** [3] - 8:9, 10:19, 24:14

## K

**KATHLEEN** [1] - 1:8

**keeping** [2] - 15:22, 18:22
**kept** [1] - 19:1
**known** [2] - 9:18, 23:2
**knows** [3] - 14:20, 21:2, 21:3

## L

**lack** [2] - 4:20, 5:4
**laid** [1] - 8:16
**large** [2] - 20:23, 28:24
**larger** [1] - 15:13
**largest** [1] - 19:6
**Las** [1] - 2:4
**last** [2] - 18:22, 20:21
**LATULIPPE** [1] - 1:5
**LaTulippe** [33] - 3:7, 4:17, 5:1, 5:4, 5:22, 5:24, 6:6, 7:13, 9:13, 9:17, 9:21, 9:23, 10:20, 11:1, 11:7, 11:13, 11:25, 12:2, 12:13, 12:24, 13:2, 13:17, 13:21, 16:15, 17:4, 17:24, 18:12, 21:20, 24:7, 24:9, 24:12, 30:19
**LaTulippe's** [8] - 4:14, 7:8, 10:10, 10:17, 13:12, 14:5, 22:4, 30:23
**Laudermill** [2] - 16:8, 16:13
**law** [12] - 5:8, 7:17, 9:23, 9:24, 9:25, 14:17, 14:18, 18:1, 22:2, 23:14, 26:8, 31:19
**laws** [1] - 9:22
**learn** [2] - 23:9, 32:21
**learned** [4] - 9:16, 11:5, 24:25, 28:12
**learning** [1] - 26:18
**Lebanon** [2] - 20:13, 20:14
**less** [3] - 16:18, 19:5, 20:23
**letter** [8] - 13:6, 25:6, 25:8, 25:17, 25:20, 26:2, 26:4, 26:10
**letters** [1] - 25:5
**letting** [1] - 32:4
**liberty** [1] - 4:19
**license** [18] - 4:14, 4:24, 5:2, 5:10, 5:20, 12:15, 18:15, 21:21, 22:3, 22:5, 22:11, 22:16, 22:21, 23:7, 29:4, 29:8, 29:11, 30:14
**life** [2] - 20:11, 24:11
**light** [4] - 14:24, 15:1, 15:3, 30:10
**likelihood** [2] - 17:11, 27:9, 27:14, 29:23, 29:24
**likely** [1] - 30:4
**limited** [1] - 34:12
**link** [1] - 10:13
**livelihood** [3] - 8:22, 8:24, 8:25
**lives** [1] - 29:20
**living** [6] - 9:1, 11:14, 12:3, 27:25, 30:7, 30:14
**LLP** [1] - 2:3
**look** [3] - 10:7, 27:16, 28:4
**looking** [1] - 27:24
**looks** [1] - 4:18
**loss** [1] - 18:9
**lost** [2] - 12:2, 12:3
**lowest** [1] - 19:2

## M

**main** [2] - 5:3, 31:22

**Maine** [1] - 19:3
**major** [1] - 20:24
**mandate** [2] - 6:7
**mandated** [1] - 7:17
**MARC** [1] - 2:8
**marc.abrams@doj.state.or.us** [1] - 2:9
**MARCO** [1] - 1:16
**Mariah** [1] - 3:18
**MARIAH** [1] - 2:3
**mark** [1] - 3:21
**Market** [1] - 2:9
**mask** [19] - 6:8, 6:9, 6:13, 6:14, 6:15, 6:22, 6:23, 6:25, 7:4, 7:14, 8:1, 8:12, 9:14, 13:15, 17:5, 18:25, 20:23, 25:23
**mask-less** [1] - 20:23
**masks** [16] - 7:10, 7:18, 7:25, 10:12, 13:2, 13:4, 13:11, 14:14, 15:4, 17:21, 23:25, 25:13, 25:23, 25:25, 26:15, 26:17
**material** [1] - 24:1
**Mathews** [1] - 8:17
**matter** [3] - 3:7, 3:8, 28:5
**matters** [1] - 20:19
**means** [2] - 8:24, 34:5
**media** [4] - 23:3, 23:9, 25:15, 25:23
**Medical** [2] - 13:9, 17:2
**medical** [9] - 4:23, 11:15, 20:9, 21:1, 21:4, 24:24, 25:1, 26:8, 26:9
**members** [1] - 30:20
**memo** [1] - 12:22
**mentioned** [4] - 13:20, 21:14, 21:15, 34:12
**mere** [1] - 20:15
**merely** [2] - 13:11, 26:4
**merge** [1] - 11:9
**Merit** [1] - 34:22
**meritless** [1] - 11:5
**merits** [7] - 4:17, 27:10, 27:14, 29:23, 29:24, 30:4, 30:9
**met** [2] - 6:12, 14:9
**mgondeiro@tylerbursch.com** [1] - 2:4
**microbiology** [1] - 15:11
**micron** [1] - 15:7
**middle** [1] - 12:4
**might** [5] - 5:14, 10:17, 10:20, 26:5, 29:18
**miles** [4] - 20:8, 20:13, 20:14, 20:16
**minimized** [1] - 11:3
**Minnesota** [1] - 20:23
**minute** [1] - 6:4
**misconduct** [1] - 10:5
**molecule** [1] - 15:8
**moment** [1] - 32:3
**money** [1] - 18:10
**Montana** [1] - 19:5
**month** [5] - 13:23, 13:24, 22:7, 22:9, 27:1
**months** [3] - 11:22, 21:23, 31:21
**moreover** [1] - 11:21
**most** [6] - 8:13, 9:2, 13:3, 17:22, 20:2, 21:2
**motion** [3] - 3:9, 19:13, 30:25
**move** [1] - 31:11

**moving** [1] - 15:17
**MR** [7] - 3:6, 3:21, 4:1, 12:19, 18:7, 32:9, 32:24
**MS** [15] - 3:18, 4:9, 4:12, 5:12, 5:17, 6:11, 6:20, 6:23, 7:2, 7:6, 7:11, 7:20, 21:10, 31:14, 32:4
**multifaceted** [1] - 19:1
**multiple** [2] - 10:14, 14:8
**Murrieta** [1] - 2:5
**must** [3] - 9:4, 10:5, 29:6
**mute** [1] - 15:24

## N

**nanometers** [2] - 15:7, 15:8
**nation** [1] - 21:1
**NE** [1] - 2:13
**necessarily** [1] - 12:20
**need** [10] - 5:16, 8:15, 11:15, 12:5, 12:11, 20:1, 22:6, 30:14, 32:3, 32:7
**needed** [2] - 26:7, 27:4
**needing** [1] - 20:9
**needs** [2] - 14:25, 28:4
**never** [4] - 8:11, 9:13, 18:9, 21:20
**next** [5] - 29:15, 30:12, 31:2, 31:7, 31:8
**nice** [1] - 15:24
**none** [4] - 7:9, 10:7, 17:24, 21:13
**nonetheless** [1] - 14:12
**normal** [1] - 23:13
**North** [1] - 19:4
**notable** [1] - 22:18
**notably** [1] - 10:16
**note** [4] - 8:3, 21:19, 23:6
**noted** [1] - 13:1
**nothing** [5] - 20:4, 32:17, 32:25
**notice** [7] - 9:21, 10:4, 21:14, 21:16, 21:19, 22:5, 26:24
**notified** [3] - 21:21, 25:1, 25:8
**notion** [1] - 10:20
**November** [1] - 25:6
**number** [1] - 3:8

## O

**obey** [2] - 14:20, 18:25
**observation** [1] - 24:21
**occur** [3] - 30:11, 30:15, 34:11
**occurred** [2] - 17:20, 32:18
**occurring** [1] - 34:13
**odd** [1] - 21:23
**OF** [3] - 1:2, 1:13, 2:11
**offer** [1] - 21:5
**offered** [2] - 14:2, 14:3
**office** [4] - 8:7, 8:12, 13:12, 23:17
**often** [1] - 9:10
**OMB** [8] - 13:23, 13:25, 14:9, 17:19, 18:12, 26:14, 26:15, 26:19
**OMB's** [1] - 14:5
**omission** [1] - 10:3
**once** [1] - 28:8
**one** [8] - 9:21, 12:23, 15:9, 20:7, 25:5, 25:6, 29:14, 31:16
**open** [1] - 21:22
**opinion** [1] - 21:4

**opinions** [1] - 7:22
**opportunity** [1] - 5:7
**opposing** [1] - 11:9
**oral** [1] - 12:21
**Oral** [1] - 1:14
**order** [17] - 3:10, 6:21, 9:20, 10:16, 14:25, 16:5, 17:11, 21:15, 23:9, 26:19, 26:25, 27:7, 27:8, 30:14, 31:1, 31:24, 32:19
**orders** [1] - 13:11
**OREGON** [1] - 1:2
**Oregon** [24] - 1:8, 1:24, 2:7, 2:10, 2:13, 3:21, 5:8, 6:20, 12:8, 13:8, 13:9, 14:17, 14:18, 15:22, 16:21, 17:2, 19:1, 19:22, 20:11, 23:14, 24:24, 34:15, 34:24
**Oregonians** [1] - 18:22
**original** [1] - 34:16
**ORS** [3] - 25:18, 26:20, 29:2
**ORSs** [1] - 29:25
**OSHA** [1] - 13:8
**otherwise** [1] - 20:24
**outbreaks** [1] - 20:24
**outcomes** [1] - 26:2
**outweigh** [2] - 10:25, 11:12
**overlapping** [1] - 34:8
**overwhelming** [1] - 21:4
**own** [3] - 18:16, 25:13, 28:10

**P**

**p.m** [2] - 3:1, 33:4
**page** [1] - 10:16
**pain** [5] - 12:7, 12:9, 12:10, 20:7, 24:8
**painkillers** [1] - 24:10
**pandemic** [3] - 12:4, 30:15, 30:22
**paperwork** [1] - 19:12
**paragraph** [6] - 12:25, 14:1, 14:6, 15:13, 15:14, 15:16
**part** [7] - 15:18, 18:25, 19:23, 21:2, 21:8, 29:10, 29:23
**particular** [3] - 10:22, 32:14, 32:18
**particularity** [1] - 10:6
**particularly** [2] - 18:20, 30:10
**parties** [7] - 18:18, 27:12, 27:16, 31:6, 31:9, 32:21, 34:6
**party** [3] - 11:9, 14:22, 14:23
**patient** [2] - 5:24, 9:13
**patients** [15] - 6:8, 6:9, 8:6, 12:6, 13:3, 16:2, 20:1, 20:5, 24:4, 24:5, 24:6, 25:13, 26:4, 26:17, 30:19
**patients'** [1] - 11:15
**people** [14] - 6:8, 6:12, 6:18, 6:25, 7:5, 7:7, 7:9, 7:13, 8:6, 12:4, 12:9, 13:14, 25:15, 28:25
**performing** [1] - 5:25
**perhaps** [1] - 7:13
**period** [2] - 29:13, 30:2
**persistently** [2] - 19:11, 20:3
**person** [2] - 11:8, 18:24
**person's** [2] - 15:5, 16:4
**persons** [1] - 20:20
**perspective** [4] - 7:18, 25:3, 31:13,
32:20
**phase** [2] - 31:2, 31:7
**phone** [4] - 3:22, 15:24, 23:7, 34:7
**physicians** [2] - 20:3, 28:19
**physicist** [1] - 14:24
**place** [4] - 9:22, 17:3, 30:9, 31:8
**places** [1] - 13:13
**Plaintiff** [2] - 1:6, 2:3
**plaintiff** [38] - 3:17, 4:3, 4:6, 4:10, 4:23, 6:5, 14:7, 14:19, 15:4, 15:23, 16:8, 16:23, 17:13, 17:15, 18:18, 19:8, 20:8, 20:25, 21:8, 24:25, 25:2, 25:3, 25:5, 25:6, 25:8, 25:17, 25:21, 26:10, 26:24, 27:1, 27:4, 27:5, 29:13, 29:23, 30:4, 30:7
**plaintiff's** [7] - 11:19, 16:2, 26:21, 30:13, 31:12, 32:10
**plaintiffs** [2] - 16:13, 19:11
**plays** [1] - 20:12
**point** [1] - 6:3
**population** [1] - 30:21
**PORTLAND** [1] - 1:3
**Portland** [3] - 1:8, 1:24, 2:10
**poses** [2] - 5:19, 5:22
**posing** [1] - 12:14
**position** [1] - 25:25
**possession** [2] - 29:3, 29:7
**possibility** [2] - 11:11, 26:3
**possible** [2] - 25:7, 26:2
**post** [4] - 16:20, 17:8, 18:3, 29:14
**post-deprivation** [3] - 16:20, 18:3, 29:14
**post-hearing** [1] - 17:8
**posted** [1] - 10:14
**posts** [1] - 25:15
**PPE** [3] - 26:8, 26:12, 28:11
**practicable** [1] - 27:1
**practice** [10] - 11:19, 13:5, 19:9, 19:17, 19:21, 20:5, 25:1, 26:21, 29:4, 29:8
**pre** [9] - 9:7, 13:17, 16:6, 16:10, 16:17, 16:20, 17:8, 18:2, 22:15
**pre-deprivation** [8] - 9:7, 13:17, 16:6, 16:10, 16:17, 16:20, 18:2, 22:15
**predetermination** [3] - 8:15, 23:15, 24:15
**predict** [1] - 32:23
**prehearing** [1] - 16:20
**preliminary** [4] - 31:2, 31:9, 32:15, 32:22
**preparation** [1] - 32:19
**preparing** [1] - 32:15
**presentation** [1] - 14:9
**presented** [2] - 16:1, 26:22
**presumably** [1] - 16:16
**presume** [1] - 20:20
**presumed** [1] - 17:15
**presuming** [1] - 16:24
**prevent** [1] - 14:15
**private** [7] - 8:17, 8:21, 15:18, 15:22, 16:1, 27:16, 27:24
**probable** [2] - 9:5, 27:19
**procedural** [5] - 4:15, 9:6, 27:7, 27:20, 27:22
**Procedures** [1] - 16:22
**procedures** [6] - 8:19, 9:4, 15:19, 16:19, 27:18
**proceed** [1] - 31:1
**proceeded** [1] - 28:5
**proceeding** [1] - 28:17
**proceedings** [3] - 33:4, 34:11, 34:13
**PROCEEDINGS** [1] - 1:13
**process** [16] - 4:15, 4:18, 4:21, 5:4, 5:6, 10:5, 11:14, 13:18, 13:21, 15:17, 16:6, 21:18, 23:14, 27:7, 30:11, 30:23
**profession** [1] - 11:14
**professional** [1] - 13:12
**professionals** [2] - 21:1, 26:9
**prompt** [1] - 11:3
**promulgated** [1] - 28:19
**prong** [4] - 8:16, 9:2, 10:24, 30:6
**prongs** [1] - 11:1
**proof** [1] - 4:4
**proper** [2] - 9:21, 25:12
**property** [3] - 4:19, 5:1, 5:8
**proposed** [1] - 31:7
**prospective** [1] - 10:20
**protect** [2] - 15:5, 18:19
**protected** [3] - 4:19, 4:24, 11:13
**protocol** [1] - 9:18
**protocols** [8] - 25:1, 25:4, 25:8, 25:10, 25:12, 28:11, 28:25
**prove** [3] - 8:13, 17:19, 19:8
**proven** [1] - 23:16
**provide** [8] - 5:9, 9:21, 10:13, 12:3, 21:16, 22:2, 22:15, 24:8
**provided** [3] - 21:19, 22:20, 30:2
**providers** [2] - 6:18, 26:17
**provides** [2] - 10:12, 24:7
**providing** [6] - 5:20, 7:17, 22:10, 23:14, 23:23, 24:14
**public** [15] - 5:19, 5:22, 6:21, 10:18, 11:8, 13:13, 18:19, 20:18, 26:22, 27:13, 30:18, 30:20, 30:21, 30:22
**public's** [2] - 10:4, 26:22
**public...** [1] - 29:5
**pursuant** [1] - 25:18
**put** [5] - 17:4, 17:5, 19:10, 19:15, 21:17

**Q**

**quality** [1] - 24:11
**quarter** [1] - 15:9
**quickly** [2] - 11:5, 31:5
**quite** [3] - 20:3, 20:15, 24:10
**quo** [1] - 20:19

**R**

**rally** [1] - 20:21
**rare** [1] - 16:11
**rate** [3] - 19:1, 19:3, 19:6
**reach** [1] - 13:23
**read** [1] - 4:7
**reading** [1] - 5:15
**real** [4] - 6:2, 8:4, 8:13, 12:1
**reality** [1] - 28:15
**really** [4] - 4:22, 6:11, 24:22, 32:1

**Realtime** [1] - 34:22
**reason** [2] - 7:12, 7:23
**reasons** [8] - 6:13, 7:3, 26:1, 28:10, 29:25, 30:25, 34:12
**rebuttal** [1] - 21:9
**received** [2] - 11:21, 25:2
**receiving** [1] - 16:14
**receptionist** [1] - 7:7
**recognized** [2] - 8:23, 9:9
**record** [3] - 19:11, 19:16, 20:2
**red** [2] - 15:1, 15:3
**reduce** [1] - 14:16
**refer** [1] - 9:24
**reference** [1] - 9:25
**references** [1] - 10:11
**refused** [2] - 13:5, 17:24
**regarding** [12] - 9:2, 10:24, 23:10, 24:22, 25:2, 25:3, 25:10, 25:25, 26:8, 27:8, 31:16
**regardless** [1] - 22:20
**regards** [8] - 4:17, 25:23, 27:14, 30:5, 30:6, 30:13, 30:18, 30:20
**Registered** [1] - 34:22
**regulate** [1] - 21:3
**regulation** [1] - 17:23
**regulations** [1] - 13:10
**reinstate** [1] - 4:13
**relapsing** [1] - 12:13
**related** [3] - 16:7, 19:17, 25:16
**relevant** [2] - 18:6, 32:21
**relies** [1] - 10:8
**religious** [1] - 20:24
**rely** [2] - 24:6, 24:12
**relying** [1] - 21:17
**reply** [2] - 12:22, 21:8
**REPORTER** [2] - 5:11, 5:13
**Reporter** [3] - 1:23, 34:22, 34:22
**reporter** [1] - 3:13
**representations** [1] - 17:6
**represented** [1] - 14:22
**REPROTER** [1] - 3:15
**reputable** [3] - 7:21, 23:22
**reputation** [2] - 23:2, 23:4
**reputational** [1] - 24:17
**require** [2] - 13:11, 17:19
**required** [4] - 8:15, 23:14, 24:25, 26:16
**requirement** [2] - 5:6, 22:1
**requirements** [5] - 10:5, 10:22, 25:24, 26:13, 27:22
**requires** [2] - 5:9, 10:23
**requiring** [1] - 5:6
**respect** [1] - 11:10
**respiratory** [1] - 15:13
**respond** [2] - 25:9, 25:19
**responded** [1] - 26:10
**responding** [1] - 12:21
**response** [2] - 12:22, 25:21
**restraining** [7] - 3:10, 16:5, 17:11, 27:7, 27:8, 31:1, 32:19
**rests** [2] - 10:19, 17:13
**result** [3] - 19:9, 30:15, 30:22
**resurrected** [1] - 18:16

**revoking** [1] - 5:9
**rights** [3] - 4:15, 22:24, 24:18
**risk** [14] - 8:18, 9:3, 9:8, 14:16, 17:8, 19:21, 27:17, 28:3, 28:6, 28:21, 29:17, 30:14, 30:21
**RMR** [1] - 1:23
**Road** [1] - 2:4
**roll** [1] - 3:11
**Room** [1] - 1:24
**root** [1] - 5:6
**rules** [2] - 18:25, 28:19
**rulings** [1] - 14:22
**run** [1] - 15:1
**Ryan** [3] - 1:23, 3:14, 34:21
**RYAN** [1] - 34:21

## S

**safe** [4] - 14:25, 15:22, 18:22, 28:25
**safeguards** [3] - 8:19, 9:6, 27:20
**safer** [1] - 7:16
**safety** [5] - 10:4, 10:18, 18:19, 26:6, 26:23
**Salem** [2] - 2:13, 20:6, 20:17
**sanctions** [2] - 25:7, 26:7
**satisfy** [2] - 8:16, 10:21
**saved** [1] - 29:21
**scared** [1] - 12:7
**scheduled** [4] - 27:2, 28:2, 29:14, 29:19
**scheduling** [2] - 31:10, 32:11
**school** [1] - 20:11
**science** [19] - 7:15, 7:16, 14:7, 14:12, 14:17, 14:20, 15:2, 15:6, 15:10, 18:23, 23:21, 23:23, 23:24, 23:25, 25:24, 25:25, 28:16, 28:18
**scientific** [1] - 7:22
**scientifically** [1] - 28:10
**second** [5] - 9:2, 15:1, 26:4, 26:10, 27:10
**secondly** [2] - 3:17, 27:17
**seconds** [2] - 14:25, 15:2
**section** [2] - 9:24, 20:12
**see** [2] - 6:14, 15:13
**seeking** [1] - 27:6
**seem** [1] - 23:11
**self** [1] - 4:23
**self-evidently** [1] - 4:23
**sense** [1] - 15:10
**sent** [1] - 25:5
**September** [1] - 25:19
**serious** [3] - 10:3, 16:15, 26:22
**serve** [1] - 23:8
**serves** [1] - 11:7
**set** [4] - 10:5, 13:19, 18:3, 31:10
**setting** [2] - 13:12, 15:3
**seven** [2] - 12:24, 21:12
**several** [1] - 21:10
**severity** [1] - 8:23
**sharply** [1] - 11:7
**short** [1] - 30:2
**shortly** [1] - 32:10
**show** [7] - 17:21, 17:22, 21:14, 21:16, 23:12, 23:18, 29:6

**showing** [2] - 6:12, 23:11
**shows** [1] - 20:2, 23:25
**side** [1] - 8:2
**Sidelinger** [4] - 14:13, 15:14, 18:20, 18:21
**signature** [2] - 34:16, 34:17
**signed** [1] - 34:17
**significant** [3] - 5:8, 8:22, 11:2
**significantly** [1] - 22:9
**signing** [1] - 34:3
**simpler** [1] - 13:16
**simply** [3] - 8:12, 20:4, 29:6
**simultaneously** [1] - 22:2
**single** [3] - 10:3, 11:17, 12:6
**situation** [2] - 18:9, 19:21
**six** [1] - 14:25
**size** [3] - 15:7, 15:9, 19:5
**skirt** [1] - 22:16
**slow** [3] - 5:15, 5:16, 15:1
**smallest** [1] - 19:6
**social** [3] - 25:15, 25:21, 25:22
**someone** [5] - 8:23, 20:9, 22:8, 26:16, 29:6
**soon** [1] - 26:25
**sorry** [2] - 5:11, 5:13
**sounds** [1] - 5:14
**South** [3] - 20:13, 20:14, 20:21
**speaker's** [1] - 34:9
**speakerphone** [1] - 34:7
**speakers** [1] - 34:8, 34:9
**speaking** [1] - 34:8
**specialist** [1] - 12:7
**specialists** [1] - 12:9
**specialty** [1] - 20:7
**specific** [3] - 5:23, 10:8, 10:22
**specify** [1] - 10:3
**speculative** [3] - 6:2, 11:11, 11:19
**spiked** [1] - 20:22
**Spooner** [1] - 3:23
**SPOONER** [1] - 2:12
**spread** [3] - 10:21, 24:1, 30:15
**spreading** [1] - 30:22
**spreads** [1] - 20:20
**St** [1] - 16:9
**staff** [2] - 13:2, 17:5
**stand** [1] - 14:12
**standard** [4] - 17:16, 17:17, 17:19, 18:11
**standards** [2] - 26:5, 26:8
**start** [4] - 4:5, 4:10, 12:20
**started** [2] - 14:2, 14:4
**starting** [1] - 4:3
**State** [1] - 24:24
**state** [19] - 3:25, 10:17, 12:18, 14:17, 14:18, 19:6, 19:24, 20:22, 22:1, 25:1, 28:18, 28:22, 29:6, 29:18, 29:20, 29:21, 29:25, 30:17, 30:24
**state's** [1] - 18:21
**STATES** [2] - 1:1, 1:17
**states** [4] - 19:2, 19:3, 29:2, 29:7
**States** [2] - 1:23, 34:14
**status** [2] - 13:20, 20:19

**statute** [1] - 30:8
**stenographic** [1] - 34:5
**steps** [2] - 18:19, 29:21
**STEVEN** [1] - 1:5
**still** [1] - 17:7
**store** [1] - 18:24
**strange** [1] - 18:15
**Street** [2] - 2:9, 2:13
**struggling** [1] - 12:13
**studied** [1] - 15:11
**studies** [3] - 7:21, 23:22, 24:2
**Sturgis** [1] - 20:21
**subject** [1] - 26:6
**submitted** [2] - 4:8, 14:13
**subsistence** [1] - 16:12
**substantive** [1] - 27:19
**substitute** [2] - 9:6, 27:22
**succeed** [1] - 30:4
**success** [6] - 17:11, 17:13, 27:10, 27:14, 29:23, 29:24
**successful** [1] - 9:19
**sued** [1] - 27:5
**suffering** [5] - 4:15, 12:1, 12:4, 23:1, 24:16
**sufficient** [1] - 21:16
**suggest** [2] - 14:21, 20:16
**suggested** [1] - 15:4
**suicide** [1] - 12:10
**sum** [1] - 24:13
**summarized** [1] - 10:19
**summary** [1] - 28:17
**summer** [2] - 11:22, 20:22
**support** [3] - 16:4, 16:5, 28:25
**supposed** [2] - 10:13, 10:14
**supposedly** [1] - 11:21
**Supreme** [5] - 4:25, 5:5, 8:22, 9:8, 10:22
**surprising** [1] - 22:6
**suspect** [1] - 15:9
**suspend** [4] - 5:20, 12:15, 21:21, 22:3
**suspended** [9] - 13:22, 17:4, 22:5, 22:11, 23:7, 28:1, 28:13, 29:12, 30:8
**suspending** [3] - 5:10, 22:15, 22:21
**suspension** [11] - 9:10, 9:20, 11:23, 17:16, 17:18, 18:13, 21:24, 23:8, 26:3, 26:19, 26:25
**SW** [2] - 1:24, 2:9
**symptoms** [1] - 26:17

## T

**Tanasse** [2] - 16:9, 18:1
**tarnished** [1] - 23:2
**teams** [1] - 20:12
**technical** [1] - 34:10
**technological** [1] - 34:13
**temporarily** [2] - 27:25, 30:8
**temporary** [6] - 3:10, 16:5, 17:10, 27:7, 30:25, 32:19
**termination** [1] - 10:25
**terrible** [1] - 8:2
**test** [3] - 8:16, 8:17, 15:18
**THE** [27] - 1:1, 1:2, 1:16, 3:5, 3:7, 3:15, 3:16, 3:19, 3:24, 4:2, 4:10, 5:11, 5:13,

6:3, 6:17, 6:22, 6:24, 7:5, 7:9, 7:12, 12:17, 21:7, 24:20, 32:1, 32:6, 32:17, 33:1
**themselves** [2] - 20:20, 34:9
**thereafter** [1] - 27:5
**therefore** [1] - 30:2
**thinks** [2] - 14:20, 14:24
**third** [2] - 27:11, 27:20
**threat** [5] - 8:4, 12:14, 14:16, 17:18, 23:19
**three** [5] - 4:18, 8:16, 14:3, 15:18, 27:15
**three-part** [1] - 15:18
**three-prong** [1] - 8:16
**timeline** [1] - 32:5
**tina.beattywalters@doj.state.or.us** [1] - 2:8
**tip** [1] - 11:22
**tips** [5] - 11:6, 19:23, 28:22, 30:16, 30:24
**today** [2] - 31:4, 33:1
**today's** [1] - 17:6
**toss** [1] - 20:25
**touched** [1] - 18:5
**towards** [1] - 12:2
**traced** [3] - 8:7, 11:18, 23:17
**tracing** [1] - 19:16
**transcript** [2] - 34:4, 34:15
**TRANSCRIPT** [1] - 1:13
**transmission** [1] - 11:11
**transmissions** [1] - 8:7
**transmitted** [1] - 15:12
**trap** [1] - 15:5
**treat** [1] - 9:14
**treating** [2] - 6:8, 6:9
**treatment** [1] - 24:8
**TRO** [2] - 14:10, 19:14
**true** [6] - 8:10, 8:13, 27:3, 28:11, 28:13, 34:4
**trust** [1] - 24:7
**turned** [1] - 14:4
**turning** [1] - 29:22
**two** [10] - 4:22, 7:7, 7:24, 11:1, 15:2, 19:19, 20:7, 25:5, 31:14, 31:22
**TYLER** [1] - 2:3
**type** [1] - 28:5

## U

**ultimately** [1] - 28:1
**uncontested** [1] - 17:22
**under** [14] - 9:4, 16:3, 17:13, 18:1, 22:1, 23:14, 25:9, 27:15, 28:12, 29:2, 30:1, 30:8
**underway** [1] - 13:22
**undisputed** [1] - 31:25
**unfounded** [1] - 9:17
**unique** [1] - 24:8
**UNITED** [2] - 1:1, 1:17
**United** [2] - 1:23, 34:14
**unprofessional** [1] - 26:5
**unreasonable** [1] - 29:13
**unrepresented** [1] - 14:23
**unusual** [1] - 18:7

**up** [4] - 19:10, 28:13, 31:5, 31:20
**US** [1] - 17:14

## V

**vague** [1] - 6:1
**value** [3] - 8:19, 9:5, 27:19
**variously** [1] - 16:1
**vector** [1] - 20:22
**verifiably** [1] - 11:18
**Vermont** [1] - 19:4
**versus** [1] - 3:8
**via** [1] - 34:7
**video** [3] - 10:11, 10:13, 10:15
**videoconference** [1] - 34:7
**videoconference/speakerphone** [1] - 34:14
**videoconference/telephonic** [3] - 34:5, 34:6, 34:11
**videos** [1] - 10:14
**view** [1] - 29:1
**violate** [1] - 22:23
**violated** [3] - 4:14, 9:23, 9:25
**violation** [4] - 4:18, 9:25, 21:18, 27:6
**virus** [2] - 15:6, 15:12
**voices** [1] - 15:25
**vs** [1] - 1:7

## W

**wait** [1] - 21:23
**waited** [2] - 11:22, 13:24
**Walters** [1] - 3:22
**WALTERS** [1] - 2:7
**wants** [1] - 14:7
**warned** [1] - 25:6
**warrant** [2] - 17:3, 17:7
**Washington** [1] - 34:23
**wear** [12] - 6:7, 6:9, 6:15, 6:22, 6:23, 6:25, 7:4, 7:18, 7:25, 8:1, 8:12, 13:4
**wearing** [9] - 6:13, 6:14, 7:9, 7:14, 13:2, 13:14, 14:14, 18:25, 26:17
**weeks** [4] - 19:20, 28:2, 29:15, 30:12
**welfare** [2] - 16:12, 16:14
**well-known** [1] - 23:2
**WHITE** [1] - 34:21
**White** [2] - 1:23, 34:21
**widely** [1] - 20:20
**wife** [1] - 7:8
**Winter** [5] - 16:3, 17:12, 18:7, 27:9, 29:22
**woefully** [1] - 5:21
**word** [1] - 7:15
**wore** [1] - 9:14
**world** [1] - 21:2
**worn** [1] - 25:14
**worried** [1] - 18:13

## Y

**year** [1] - 18:22
**years** [1] - 23:4
**yellow** [1] - 14:24
**YouTube** [4] - 10:11, 10:13, 10:14,

10:15

## CERTIFICATE OF SERVICE

I certify that on March __18__, 2021, I served the foregoing DECLARATON OF MARC

ABRAMS IN SUPPORT OF PARTIAL MOTION TO DISMISS upon the parties hereto by the

method indicated below, and addressed to the following:

R. Todd Frahm                        ___ HAND DELIVERY
Mariah Gondeiro                       _X_ MAIL DELIVERY
Tyler & Bursch, LLP                   ___ OVERNIGHT MAIL
25026 Las Brisas Road                 ___ TELECOPY (FAX)
Murrieta, CA 92562                    ___ E-MAIL
        *of Attorneys for Plaintiff*  _X_ E-SERVE


                    *s/ Jessica Spooner*
                    _____
                    MARC ABRAMS #890149
                    Assistant Attorney-in-Charge
                    CHRISTINA L. BEATTY-WALTERS #981634
                    Assistant Attorney General
                    JESSICA SPOONER #105919
                    Assistant Attorney General
                    Trial Attorneys
                    Tel (971) 673-1880
                    Tel (503) 947-4700
                    Fax (503) 947-4791
                    Marc.Abrams@doj.state.or.us
                    Jessica.Spooner@doj.state.or.us
                    Tina.BeattyWalters@doj.state.or.us

                    Of Attorneys for Defendants

Page 3 -   **DECLARATON OF MARC ABRAMS IN SUPPORT OF PARTIAL MOTION TO DISMISS**